THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAVAN DELONEY, Defendant-Appellant.

First District (4th Division)   Nos. 1—98—1413, 1—00—0914 cons.

Opinion filed June 30, 2003.

Edwin A. Burnette, Public Defender, of Chicago (Donald S. Honchell, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Michele Grimaldi Stein, and Margaret M. Ogarek, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

This appeal is before us again because of a supervisory order of the Illinois Supreme Court entered on December 31, 2002, directing this court to vacate and reconsider its previous order in this appeal, *People v. Deloney*, Nos. 1—98—1413, 1—00—1914 cons. (July 26, 2002)

(unpublished order under Supreme Court Rule 23), in light of the supreme court's recent holding in *People v. Boclair*, 202 Ill. 2d 89 (2002), which provides that the trial court may not summarily dismiss a postconviction petition solely on the basis of its untimeliness.

The underlying facts of this case have been set forth adequately in the order concerning defendant's direct appeal. Accordingly, we state herein only those facts necessary to the disposition of this postconviction appeal, including the procedural background that follows.

On October 6, 1994, following a bench trial, defendant was found guilty of three counts of first degree murder. Defendant appealed this judgment, asserting that he was not proven guilty beyond a reasonable doubt because the eyewitness testimony was unreliable and his statement was given involuntarily and uncorroborated by the evidence. We affirmed the trial court's judgment on March 21, 1997. *People v. Deloney*, No. 1—95—0199 (1997) (unpublished order under Supreme Court Rule 23). Defendant petitioned for leave to appeal our decision, but was denied by the Illinois Supreme Court on June 4, 1997. *People v. Deloney*, 173 Ill. 2d 532 (1997).

On November 21, 1997, defendant filed a combined postconviction petition and a petition for relief from judgment pursuant to section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1998)), asserting multiple grounds for relief, including police brutality and coercion; actual innocence; ineffective assistance of trial counsel; judicial bias; and prosecutorial misconduct. After reviewing defendant's petition, the trial court found that it was untimely and, furthermore, that all of defendant's claims were frivolous and patently without merit. Thus, on February 19, 1998, the trial court summarily dismissed defendant's petition. Defendant appealed from the trial court's decision and the case was docketed as appeal number 1—98—1413. One day after filing his opening brief in the appeal, defendant filed a motion to supplement the record with an affidavit from identification witness Brenda Marie Hall, in which she recanted her trial testimony. On March 19, 1998, without commenting on the timeliness or the merits of defendant's petition, this court ordered that appeal number 1—98—1413 be dismissed with leave to reinstate, directing the trial court to reconsider its earlier dismissal of defendant's postconviction petition in light of Hall's affidavit. On January 7, 2000, after reviewing defendant's original petition with Hall's affidavit, the trial court again dismissed it on the basis of its untimeliness and frivolousness.

On February 2, 2000, defendant filed his appeal of the second dismissal of his postconviction petition, which was docketed as appeal number 1—00—0914. This court consolidated defendant's postconviction appeals. Accordingly, we consider defendant's arguments and briefs filed under both case numbers together.

On July 26, 2002, we affirmed the trial court's dismissal, finding that defendant failed to establish that the untimely filing of his petition was not due to his own culpable negligence. *Deloney*, Nos. 1—98—1413, 1—00—1914, cons., citing 725 ILCS 5/122—1(c) (West 1998). Recognizing that our affirmation of the trial court's summary dismissal was based solely on the untimeliness of the petition, we did not address the issue of whether defendant's petition presented the gist of a constitutional claim. However, soon after we issued our order, the supreme court ruled that the issue of timeliness of a postconviction petition "should be left for the State to assert during the second stage of the post-conviction proceedings" and should not serve as the basis for summary dismissal by the court in the first stage. *Boclair*, 202 Ill. 2d at 102. As such, we vacate our order of July 26, 2002, which addressed only the issue of the petition's untimeliness, and must now determine whether the trial court's finding that the claims of the petition were frivolous and without merit provides an independent basis on which to affirm the dismissal.

Defendant argues that the trial court erred by dismissing his petition because it presented factual allegations that stated the gist of a valid claim of a violation of his constitutional rights. Specifically, he asserts the following grounds in support: (1) that newly discovered evidence regarding police brutality by officers involved in defendant's case establishes a pattern of abuse which supports his claim that his confession was coerced; (2) that defendant is actually innocent because his conviction was based on coerced and inherently unreliable evidence, including witness testimony which has been recanted since trial, and that he had an alibi for his whereabouts the night of the murders; (3) that defendant's trial counsel was ineffective for failing to move to suppress or otherwise challenge the identification testimony of several witnesses and for failing to establish at trial the pattern of coercive tactics used by the police in obtaining his statement; and (4) that the prosecution engaged in misconduct by participating in the intimidation of witnesses and the defendants and by failing to provide the defense with information that some of the officers involved in the case were under investigation for allegedly using abusive tactics.[1]

■ The Post-Conviction Hearing Act confers upon the trial court

[1]For the sake of economy, we will consider defendant's arguments in support of "actual innocence" together even though they are presented in two separate briefs. In addition, we note that while defendant alleged in his petition that there was "judicial bias" at trial, he fails to further discuss or offer any evidence in support of this issue in either of his briefs. Therefore, we consider the issue waived on appeal.

the ability to summarily dismiss a defendant's petition in its first stage of review if it is frivolous or without merit. 725 ILCS 5/122—2.1(a)(2) (West 1998). A postconviction petition is considered frivolous or patently without merit if the petition's allegations, taken as true, fail to present the gist of a meritorious constitutional claim. *People v. Collins*, 202 Ill. 2d 59, 66 (2002), citing *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). The "gist" standard is "a low threshold." *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). The allegations in defendant's petition must be supported by the record or accompanying affidavits, and nonspecific and nonfactual assertions are insufficient to require an evidentiary hearing under the Act. *People v. Coleman*, 183 Ill. 2d 366, 381-82 (1998).

■ In determining whether a meritorious constitutional claim has been presented, the court may examine the court file and transcripts of the proceeding in which the petitioner was convicted and any action taken by an appellate court in such proceeding. See 725 ILCS 5/122—2.1(c) (West 1998). The court may summarily dismiss a postconviction petition if the allegations contained therein are contradicted by the record. *People v. Rogers*, 197 Ill. 2d 216, 222 (2001); *People v. De Avila*, 333 Ill. App. 3d 321, 329 (2001); see also *People v. Ramirez*, 162 Ill. 2d 235, 243 (1994). The dismissal of a postconviction petition for failure to allege a substantial deprivation of constitutional rights is a legal determination, which this court reviews *de novo*. *Coleman*, 183 Ill. 2d at 387-88.

After reviewing, *de novo*, defendant's petition in this case, we find that each of his claims is frivolous and without merit. Therefore, because defendant has failed to allege a substantial deprivation of his constitutional rights, we affirm the trial court's dismissal of defendant's postconviction petitions.

## Police Brutality and Coercion

At trial, defendant moved to suppress the statement he had made to the police while in custody, arguing that it was coerced and given involuntarily because he was abused by the police officers who interrogated him. The trial court denied his motion and allowed the statement in as evidence, finding "no reason to believe that he was ever touched or punched or slapped or threatened or abused verbally in any way." On direct appeal, defendant again argued that his statement was involuntary and uncorroborated by the evidence, and, therefore, he was not proven guilty beyond a reasonable doubt. See *Deloney*, No. 1—95—0199, slip op. at 10. This court found that the trial court's determination that defendant's statement was voluntary was not against the manifest weight of the evidence and, accordingly,

we upheld his conviction. See *Deloney*, No. 1—95—0199, slip op. at 12-13, citing *People v. Miller*, 173 Ill. 2d 167, 181 (1996). Thus, inasmuch as the purpose of the Post-Conviction Hearing Act is to address issues of constitutional dimension that have not and could not have been presented in an earlier proceeding, the doctrine of *res judicata* bars defendant from now revisiting this same issue. See *People v. Haynes*, 192 Ill. 2d 437, 464-65 (2000); *People v. Patterson*, 192 Ill. 2d 93, 139 (2000). However, defendant now claims that, since the trial, he has discovered new evidence that reveals a pattern of abuse and torture by the police and supports his previous argument that his confession was coerced. He argues that with this new supporting evidence, he has stated the gist of a meritorious claim in his petition which entitles him to proceed to a second-stage review by the trial court.

■ The supreme court has recognized that, in the interests of fundamental fairness, the doctrine of *res judicata* may be relaxed if the defendant presents substantial new evidence. *Patterson*, 192 Ill. 2d at 139. To merit a new trial, the evidence must be of such conclusive character that it will probably change the result upon retrial; material and not merely cumulative; discovered since the trial; and of such character that it could not have been discovered prior to trial by the exercise of due diligence. *Patterson*, 192 Ill. 2d at 139.

Applying the aforementioned standard, the trial court found defendant's evidence insufficient. Defendant argues on appeal that the trial court exceeded its scope of review in the first stage by assessing the merits of the evidence and that it applied "an outcome determinative test" rather than merely determining whether the petition stated the "gist of a constitutional claim." We disagree with defendant's reasoning, noting that, in order to withstand summary dismissal, defendant's petition must contain a "simple statement which presents the gist of a claim for relief which is *meritorious when considered in view of the record of the trial court proceedings*." (Emphasis added.) *People v. Dredge*, 148 Ill. App. 3d 911, 913 (1986). Thus, in order to determine whether a "gist" of a meritorious constitutional claim has been presented, the court must inquire into the relevance and merit of the defendant's supporting documents. Such an assessment is implicit in conducting a first-stage review.

In his petition, defendant asserts that he was coerced into signing a statement because he was subjected to repeated threats, beatings and intimidation; denied access to a lawyer; forced to witness the beating of his cousin, Maurice Deloney; and reassured by the police that if he was merely a driver and not the shooter in the drive-by murders, "he would have no problems." Specifically, he offers that a grey/light-haired detective punched him in the chest and a silver-

haired detective slapped him in the face and chest and threatened to throw him out the window. He further asserts that a detective with "brown hair, glasses, a mustache, and beard" and a detective who was "stocky, tall and clean shaven" were in the room at the time he was abused. The only officers defendant names as having taken part in his interrogation are "Detectives O'Brien, McKay[2], and McWeeney."

As to defendant's allegation that his cousin, Maurice, was abused, he offers no names nor even a physical description of the officers involved, claiming that he did not see their faces at the time. Defendant attaches a photocopy of an affidavit from Maurice that corroborates the general allegations of abuse, but again, fails to offer any description of the officers.

Defendant further claims in his petition that his codefendant, Ivan Smith, was also coerced into giving a statement soon after defendant's arrest. Defendant claims that Smith was slapped, punched, put in hand and leg cuffs, denied access to a lawyer, and hit in the chest with a phone book and nightstick until he could no longer breathe. Defendant identifies "Detectives Joseph Stehlik and James O'Brien, and ASAs Michael Smith and Charlie Burns" as Smith's interrogators. In addition, defendant alleges that another codefendant, Curtis Milsap, was treated at a health center "for a crushed testicle after he underwent a lengthy interrogation by the police officers investigating this case."

Defendant attaches to his petition over 900 pages of documents, which include news reports, pleadings, decisions, and police reports from the Office of Professional Standards (OPS) relating to other cases involving police brutality. Defendant alleges that these documents establish a general pattern of abuse and brutality by the police which lends support to his claim that he was abused while in police custody and, in turn, that his statement was the product of coercion.

In its brief, the State addresses each of the numerous documents presented by defendant in support of this issue, arguing that not one satisfies the aforementioned test for granting a new trial based on new evidence. The State first notes that many of the documents were discovered before the trial and that those that were discovered after the trial were not of such a character that they could not have been discovered prior to trial by the exercise of due diligence. In addition, the State offers reasons why the documents were not of such a

---

[2]It is unclear as to whom defendant refers when naming "Detective McKay." The State suggests that the reference is to the assistant State's Attorney involved in this case, James McKay. Defendant did not attempt to rebut this plausible explanation.

conclusive character that they would probably change the result upon retrial, were immaterial, or were merely cumulative. While we agree with many of the State's arguments regarding this issue, we need not rely on such in determining that defendant has not presented the gist of a meritorious constitutional claim.

As previously mentioned, a postconviction petition is properly dismissed where the allegations contained therein are contradicted by the record from the original trial proceedings. *Rogers*, 197 Ill. 2d at 222; *De Avila*, 333 Ill. App. 3d at 329; see also *Ramirez*, 162 Ill. 2d at 243. Defendant asserts in his petition, "Detectives O'Brien, McKay, and McWeeney reportedly interrogated Petitioner. During that interrogation, the Detectives subjected him to repeated threats, beatings and intimidation." However, this allegation is directly contradicted by defendant's testimony at trial:

"STATE'S ATTORNEY SMITH: Do you know the names of the detectives that were hitting you?

DEFENDANT DELONEY: I don't know their names.

STATE'S ATTORNEY SMITH: Did any of them testify here?

DEFENDANT DELONEY: No.

STATE'S ATTORNEY SMITH: Was it Detective O'Brien?

DEFENDANT DELONEY: No.

STATE'S ATTORNEY SMITH: Was it Detective McWeeney?

DEFENDANT DELONEY: No, sir.

STATE'S ATTORNEY SMITH: Was it Detective Ptak who arrested you?

DEFENDANT DELONEY: No, sir.

STATE'S ATTORNEY SMITH: No one that testified in here or on your motions were the ones that laid a hand on you?

DEFENDANT DELONEY: No, Sir.

Thus, defendant's petition may be dismissed insofar as he claims that any of the officers who testified at trial were those who abused him, because such a claim would directly contradict the record at trial. See *Rogers*, 197 Ill. 2d at 222; *De Avila*, 333 Ill. App. 3d at 329; *Ramirez*, 162 Ill. 2d at 243.

■ Because the only officers named by defendant in his petition are those whom he specifically exculpated at trial, we are left with defendant's bald allegations of abuse in which he again fails to identify any of the abusers beyond the brief physical descriptions that he previously offered at trial and on appeal. Thus, without some evidence indicating that the same officers or supervisors were involved, we have no basis upon which to conclude that any of the evidence regarding other acts of police brutality is relevant to his claims. See *Patterson*, 192 Ill. 2d at 110; *People v. Orange*, 195 Ill. 2d 437, 456 (2001) (The defendant "failed to satisfy the cause and prejudice test for relaxing

the procedural bar to his newly discovered evidence claim" where he did not identify the officers that allegedly tortured him either at his trial or in his postconviction petition). Accordingly, we find that defendant's allegation that his statement was the result of police coercion and abuse, which has been considered previously at both his motion to suppress hearing and in his direct appeal, remains barred by *res judicata*. See *Orange*, 195 Ill. 2d at 455-56.

## Actual Innocence

In his petition, defendant claims that he is actually innocent because the evidence offered at trial "did not establish [his] guilt because it was either coerced, suggested or inherently unreliable under the analysis of eyewitness identification." In support, he offers the photocopy of an affidavit from Deloris Spraggins, filed in codefendant Brooks' case, in which she states that a detective pushed and screamed at her and that she was pressured into testifying. He also offers Brenda Hall's affidavit in which she recants her trial testimony, stating that she only testified because she was tired of being questioned by the assistant State's Attorney and that her testimony was "a mistake" because everything happened too fast for her to see who did the shooting. In addition, defendant discusses Jerome Taylor's testimony given in Terrence Brooks' posttrial proceedings in which Taylor recanted his prior identification of Brooks as one of the shooters, claiming that he initially perjured himself because he had been threatened with being "locked up" for contempt by the assistant State's Attorney. In addition, defendant offers a letter, written by an alleged "expert in eyewitness identification," analyzing and critiquing the eyewitness testimony given in Terrence Brooks' trial.

Defendant also asserts that he had an alibi which, though presented at trial, was not supported by witnesses. In support, he offers affidavits from his cousins in which they claim that defendant was with them at the time of the shootings and that, although they offered this information to defendant's trial lawyer, they were not called to testify.

The trial court found the evidence offered by defendant in support of his actual innocence claim also did not satisfy the test for granting a new trial. The court found that some of the tendered evidence was available pretrial, and that, even if it could be considered "new," it was not likely to change the result at trial.

Defendant argues that the trial court again incorrectly applied an "ultimate test" when reviewing the allegedly new evidence. Defendant further claims that the evidence and affidavits both establish that there was "intensive coercive conduct against witnesses" and further

substantiate an alleged "pattern of police and prosecutorial misconduct." In response, the State argues that the trial court applied the correct test and that defendant is merely attempting to challenge the sufficiency of the evidence, once again, because he has not presented any evidence of his actual innocence with his petition. We agree with the State for the reasons that follow.

■ In order to raise a valid "free-standing" claim of actual innocence, a defendant must present newly discovered evidence that is not merely being used to supplement an assertion of a constitutional violation with respect to trial but, rather, *establishes his innocence*. See *People v. Washington*, 171 Ill. 2d 475, 479 (1996). Again, we note that, in order for relief to be granted, the supporting evidence must be new, material, noncumulative, and most importantly, of such conclusive character as would probably change the result upon retrial. *Washington*, 171 Ill. 2d at 488.

■ We have already discussed how defendant's claim that his own statement was coerced is nothing more than a general allegation that is unsubstantiated by the tenuous evidence he offers with his petition. Accordingly, we need not revisit this issue in relation to his actual innocence claim. Next, we look at defendant's argument that the testimony given by the eyewitnesses at his trial was unreliable. We begin by noting that this issue is barred by *res judicata*, as defendant has attacked the reliability of the witnesses both at trial and on direct appeal. *Deloney*, No. 1—95—0199, slip op. at 11-12. In an attempt to evade this procedural bar, he offers a letter from Lawrence T. White, Ph.D., a professor of psychology. We find, however, that this evidence does not rise to the standard set forth in *Washington*, because it is merely cumulative to defendant's previous attempts to discredit Hall's testimony at both the trial and on appeal. Furthermore, though dated posttrial, the letter does not contain any information that is "new"— the professor's analysis is based only on the facts that were known at the time of trial. Defendant offers no reason why this statement could not have been procured earlier for the purpose for which he now attempts to use it. In addition, we note that even if the letter could qualify as "new," it is not of such a conclusive nature that it would likely change the outcome at trial and it would only bear on the sufficiency of the evidence. In other words, it does not establish defendant's actual innocence.

*Res judicata* also bars defendant's attempt to bolster an alibi that was already presented and rejected at trial. We begin our analysis of this issue by noting that it is illogical for defendant to claim that this evidence regarding his alibi is new. It is axiomatic that defendant knew of his alibi at the time of trial and, furthermore, both alibi wit-

nesses attest that defendant's attorney had been given their information, but that no one called them at trial. However, regardless of whether the information was new, it does not meet the other factors required by *Washington*. Specifically, we note that the trial court already considered and rejected defendant's alibi at trial in light of the State's strong evidence contradicting it—evidence that included the defendant's own statement, his codefendants' statements, and eyewitness testimony. Furthermore, because the affidavits are merely cumulative of the alibi testimony defendant offered at trial and contradict the bulk of the evidence, it cannot be said that the cousins' testimony would have likely changed the outcome at trial.

We are left to consider defendant's assertion that all of the eyewitnesses have recanted their previous testimony and the various affidavits that he attaches to his petition in which the witnesses discuss the coercive behavior of the police. We first note that recantation evidence is generally regarded as unreliable. *People v. Brooks*, 187 Ill. 2d 91, 132 (1999); *People v. Steidl*, 177 Ill. 2d 239, 260 (1997). In fact, the recantations of Alan Epton and Jerome Taylor, presented in codefendant Brooks' case, were specifically considered and deemed unreliable by the trial court. The supreme court later upheld these findings in *Brooks*, 187 Ill. 2d at 132-33, noting that "Taylor's recantation was made under suspicious circumstances."

However, regardless of their reliability, we find that the recantations do not present a constitutional claim. "In the absence of an allegation of the knowing use of false testimony, or at least some lack of diligence on the part of the State, there has been no involvement by the State in the false testimony to establish a violation of due process." *People v. Brown*, 169 Ill. 2d 94, 106 (1995). In *Brown*, the defendant alleged in his petition that the testimony of the only witnesses to the incidents in question was false and that coercion from certain police officers was instrumental in persuading the false testimony. *Brown*, 169 Ill. 2d at 99. In an affidavit accompanying the defendant's petition, one of the alleged victims (and the State's key witness) recanted his testimony, claiming that he and his brother testified falsely at trial as to the material facts and that " '[b]efore trial they [the State] had us listen to some tapes to remember what we had said.' " *Brown*, 169 Ill. 2d at 100. The supreme court upheld the lower courts' findings that there was nothing in the defendant's petition or the recantation affidavit that "remotely pointed to the State's knowing use of perjured testimony." *Brown*, 169 Ill. 2d at 101. While the witnesses in this case make stronger statements implying police coercion in their affidavits than those that were considered in *Brown*, the instant allegations must be examined under the particular circumstances of this case—

specifically, the fact that the witnesses were extremely reluctant to testify because of defendant's gang affiliations. For instance, Epton testified at trial that he was "getting threatened by certain people around [his] house," including members of his own gang; George Cruthard testified that originally he did not want to cooperate with police because he was afraid for himself and his family; Hall offered in her original statement that she did not come forward originally because she was scared; Spraggins stated that she was afraid because she lived in the same neighborhood as the defendants; Taylor testified that he initially refused to cooperate with authorities because of his fear of gang retaliation; and, as discussed in *Brooks*, 187 Ill. 2d at 114, Taylor's later recantation also appeared to be the result of gang influence where it was made during a truce between the rival gangs, Taylor's aunt testified that Taylor told her he was being forced to change his testimony, and he was escorted to the court. Within this context, the apparent tenacity with which the police sought witness testimony was more likely attributable to a need to overcome the witnesses' fear of gang retaliation rather than a desire to elicit false testimony.

In any event, because neither defendant's petition nor the accompanying affidavits allege that the State knowingly used false testimony or even that the alleged acts of intimidation were designed to elicit perjured statements from the witnesses, we will not draw that inference.

We further note that, even if defendant had alleged the State knowingly used perjured testimony, the witnesses' statements that he offers would not support the claim. First, we note that Spraggins did not claim that she perjured herself at trial. Indeed, she claims in her affidavit that she only "saw a taxi-cab that was coming down the street with no lights on" and that she "testified that [she] saw the cab and nothing more" at trial—thus, her affidavit would not support a claim that the State knowingly used perjured testimony. Next, in regard to Taylor's claim of coercion, defendant offers no evidence in support except Taylor's testimony in codefendant Brooks' trial in which he recanted his previous trial testimony, claiming he was coerced into testifying by the State's Attorney and police. It goes without saying that Taylor's testimony elicited at Brooks' trial, which was held simultaneously with defendant's trial, was previously known to defendant and cannot be considered newly discovered. Finally, regarding Hall's recantation, defendant offers no explanation as to why the facts that she now alleges in her affidavit are of such a character that they could not have been discovered when she testified at trial.

In sum, the evidence that defendant offers in support of his claim of actual innocence does not present the gist of a constitutional claim.

### Ineffective Assistance of Counsel

Defendant argues that his petition presents a valid claim of ineffective assistance of counsel. In particular, he asserts that his trial attorney was ineffective for failing to move to suppress the identification testimony of Hall, Cruthard, and Epton; for failing to present expert testimony or otherwise challenge the reliability of the testimony given by Hall, Cruthard, and Epton; for failing to present a comprehensive case establishing that his statement was coerced; for failing to present "readily available evidence of systemic police abuse and of tampering with witnesses"; for failing to present the alibi testimony of defendant's cousins that he was with them at their grandmother's home at the time of the shooting; for failing to object to the joinder of offenses; and for failing "to object to or make the trial court aware of the obvious confusion created by the incomplete severance of the defendant's [sic] trials." The trial court found that defendant's claims lacked merit. We agree with the trial court's finding for the reasons that follow.

■ To prevail on a claim of ineffective assistance of counsel, a defendant must (1) show that his counsel's performance fell below an objective standard of reasonableness and (2) demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). The scrutiny of counsel's performance must be "highly deferential," and courts must be careful to avoid the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065. When viewing counsel's performance, there is a strong presumption that his conduct fell within the range of reasonable professional performance. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065. Decisions on what evidence to present and which witnesses to call on a defendant's behalf rest with trial counsel and, as matters of trial strategy, are generally immune from claims of ineffective assistance of counsel. *People v. Ward*, 187 Ill. 2d 249, 261-62 (1999). The only exception to this rule is when counsel's chosen trial strategy is so unsound that counsel fails to conduct any meaningful adversarial testing. *Ward*, 187 Ill. 2d at 262.

■ In this case, the record reveals that defense counsel conducted significant adversarial testing, including the challenge of eyewitness testimony and identifications, presentation of a motion to suppress defendant's statement, and an attempt to develop defendant's allegations of police brutality. Defendant alleges that his trial counsel was ineffective for not presenting expert testimony to challenge the eyewitness testimony. Defendant offers no evidence, however, that rebuts the

presumption that counsel's conduct fell within the range of reasonable professional performance in light of the adversarial testing he conducted at trial. See *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065. Thus, we find that counsel's decision not to call expert witnesses to challenge the eyewitness testimony does not constitute ineffective assistance of counsel.

Defendant next alleges that defense counsel was ineffective for not calling potential alibi witnesses Kenyette Deloney and Cynthia Deloney to testify. The record reveals that defense counsel had contacted these witnesses and even disclosed them to the prosecution as potential witnesses, thus defendant's claim is merely that he *chose* not to call them, not that he failed to investigate them. See *People v. Dean*, 226 Ill. App. 3d 465, 468 (1992), *appeal denied*, 145 Ill. 2d 638 (1992). We find that the record further reveals that defendant's decision not to call the alibi witnesses was strategic. First, we note that the alibi witnesses were defendant's cousins and, as such, their credibility may have carried little weight. See *Dean*, 226 Ill. App. 3d at 468. In addition, defense counsel noted in his closing argument that the State's theory that defendant was a shooter who rode in the back of the taxi was inconsistent with defendant's statement in which he professed that he drove the red LeBaron while fellow members of the Black Disciples street gang, Maurice Deloney and Ollie Bays, shot at the rival gang members. Inasmuch as defense counsel was relying on defendant's statement to discredit the State's theory, it would not have been strategic for him to further develop the contradictory alibi testimony.

Defendant suggests that *People v. Tate*, 305 Ill. App. 3d 607 (1999), is controlling in this matter. We find, however, that *Tate* is distinguishable from the instant case. In *Tate*, the record revealed "no apparent strategic reason for not calling [the alibi witnesses] to testify." 305 Ill. App. 3d at 612. As discussed above, the record in the instant case reveals that defense counsel's decision not to call defendant's cousins as witnesses was reasonable trial strategy.

Regarding defendant's claim that his counsel was ineffective for failing to move to suppress the identifications made by Hall, Cruthard, and Epton and for failing to present evidence regarding the alleged pattern of police abuse, we find that defendant fails to show how he has been prejudiced. To begin, we note that codefendant Brooks filed motions to suppress the identification testimony of the same witnesses and each was denied at trial. Later, the supreme court upheld the trial court's decision. *Brooks*, 187 Ill. 2d at 124-32. Furthermore, defendant previously challenged the accuracy of the eyewitnesses' testimony both at trial and on direct appeal. Both the trial court and this court

have addressed this issue, finding that the identifications were sufficient. *Deloney*, No. 1—95—0199, slip op. at 12-13. Accordingly, defendant cannot show that he was prejudiced by his counsel's decision not to move to suppress the witnesses' identifications.

Similarly, defendant cannot show how he was prejudiced by counsel's failure to present evidence of police abuse. As discussed previously, defendant made only generalized accusations of abuse and could not identify his alleged abusers; thus, the evidence of other acts of alleged abuse was irrelevant. Furthermore, if we are to believe defendant's previous argument that the evidence regarding police misconduct was only discovered since trial, then we could not deem his trial counsel ineffective for failing to present it. Even if the evidence was available at the time of trial, and counsel had failed to discover it, we do not believe that counsel's failure to further investigate defendant's claims of police misconduct failed to meet reasonable professional standards. We accord a heavy measure of deference to counsel's decision regarding whether to investigate the allegations of abuse. See *People v. Orange*, 168 Ill. 2d 138, 149 (1995). Where the circumstances known to counsel at the time of his investigation do not reveal a sound basis for further inquiry in a particular area, such as where the defendant has presented only generalized allegations of coercive activity, it is not ineffective for the attorney to forgo additional investigations. *People v. Orange*, 168 Ill. 2d at 150-51. In this case, where defendant could not identify his alleged abusers and he had expressly ruled out the only officers known to have interrogated him, it was not unreasonable for defense counsel to discontinue further investigation or development of the claim. In any event, because we may resolve ineffectiveness claims by reaching only the prejudice component, we need not even address defense counsel's performance. See *People v. Mahaffey*, 194 Ill. 2d 154, 175 (2000).

Finally, defendant's allegations that counsel was ineffective for failing to object to the joinder and the "confusion" of the case should have been raised on appeal. As such, they are waived. Furthermore, we find that these allegations are merely conclusory and unsupported by the record. Defendant does not develop his argument nor does he present any evidence that tends to show either that his counsel's performance fell below an objective standard of reasonableness or that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Because defendant has offered no evidence that would require us to look beyond his waiver, this issue was properly dismissed as frivolous and without merit.

Accordingly, for the reasons stated above, we find that defendant

has failed to show in his postconviction petition that he was denied effective assistance of counsel.

## Prosecutorial Misconduct

■ Defendant alleges that the State participated in the systematic abuse and intimidation of defendant, codefendants, and witnesses; that prosecutors and police investigators made remarks to potential witnesses suggesting defendant's guilt in the shootings; and that the State failed to inform defendant of exculpatory evidence as required under *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). As discussed earlier, defendant's claims regarding the alleged "systematic abuse and intimidation" as well as the "suggestive" tactics the police allegedly used should have been raised on appeal. Defendant could get around this procedural bar by presenting evidence that is of such conclusive character that it will probably change the result upon retrial; material and not merely cumulative; discovered since the trial; and of such character that it could not have been discovered prior to trial by the exercise of due diligence. *Patterson*, 192 Ill. 2d at 139. However, as is also discussed above, the evidence presented with the petition does not satisfy this standard. Accordingly, defendant has failed to present the gist of a constitutional claim as to these issues.

■ Finally, as to his *Brady* claim, we find that the allegedly "exculpatory evidence" that defendant presents in support of his allegation of police abuse is not material and, therefore, the State did not violate defendant's constitutional rights by not disclosing it. See *People v. Mahaffey*, 194 Ill. 2d at 171-72 ("Evidence is considered 'material' if there is a 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different' "), quoting *United States v. Bagley*, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494, 105 S. Ct. 3375, 3383 (1985). As previously discussed, because defendant never identified his alleged abusers, the volumes of evidence regarding police brutality he presented with his petition were irrelevant to his claim. Furthermore, if we are to believe defendant's argument that many of the documents presented in regard to his claim of police brutality were not in existence or not discoverable until after the trial, we could not find that such evidence was "readily available" at the time of trial as he now argues in support of his *Brady* claim.

Accordingly, we find that defendant has failed to present a gist of a meritorious constitutional claim anywhere in his postconviction peti-

tion, and therefore, the trial court's summary dismissal of his petition was appropriate.

Affirmed.

CAMPBELL, P.J., and QUINN, J., concur.