Nos. 2--03--1045 & 2--04--0476 cons.          filed 4/19/06

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03--CF--621 |
| VICTOR M. BARCIK, | ) ) | Honorable Michael J. Burke, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

_____

JUSTICE BOWMAN delivered the opinion of the court:

Following a jury trial, defendant, Victor M. Barcik, was convicted of two counts each of aggravated driving under the influence (DUI) (625 ILCS 5/11--501(a)(2), (c--1)(3) (West 2002)) and enhanced driving while his license was revoked (DWLR) (625 ILCS 5/6--303(a), (d) (West 2002)). He was sentenced to seven years' imprisonment for DUI to run concurrently with the six years he was given for DWLR.

Defendant filed a consolidated appeal, arguing that (1) his multiple convictions for each of his crimes violated the one-act, one-crime rule; (2) his extended sentence for DWLR was improper; and (3) the trial court erred in summarily dismissing a petition that he had filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122--1 et seq. (West 2002)), in which he claimed that he was denied the effective assistance of counsel. We vacated one of defendant's convictions of both

DUI and DWLR and remanded his case for resentencing on the remaining count of DWLR. People v. Barcik, 357 Ill. App. 3d 1043, 1044-45 (2005). At the same time, we dismissed his appeal from the dismissal of his postconviction petition, because we found that we lacked jurisdiction to consider the substance of that matter. Barcik, 357 Ill. App. 3d at 1047-48. But the supreme court, in the exercise of its supervisory authority, directed us to vacate the portion of our decision in which we found jurisdiction lacking and to resolve defendant's postconviction appeal on the merits. People v. Barcik, 217 Ill. 2d 569 (2005). We do so now.

## I. BACKGROUND

Much of the facts and procedure of this case is detailed in our earlier decision (see Barcik, 357 Ill. App. 3d 1043) and is repeated here only as necessary to an understanding of defendant's postconviction petition.

According to Sgt. Charles Yanz of the Wheaton police department, defendant was pulled over shortly after midnight on March 1, 2003, after the car he was driving, which had one headlight out, veered off the road, went onto a curb, went over the curb, and then crashed back down onto the road. When Sgt. Yanz approached defendant's car, he smelled an "extremely strong" odor of alcohol coming from the driver's side window. In the car with defendant were his fiancée, Anita Mazzochi, and Duane and Brian Besch. Although defendant's speech was normal, his eyes were glassy and bloodshot. As Sgt. Yanz neared, defendant told his companions: "I'm fucked, I'm going to jail."

This was the first time Sgt. Yanz had met defendant. When Sgt. Yanz asked him for his driver's license, defendant replied that he had a Wisconsin driver's license, but he did not have it with him. He did, however, have an Illinois identification card, which he handed to Sgt. Yanz. After receiving the identification card and an insurance card, Sgt. Yanz returned to his police vehicle. There, he called for a second officer, which is customary in suspected DUI encounters. A

few minutes later, Wheaton police officer James Craig arrived. At that point, Sgt. Yanz went back over to defendant and instructed him to walk over to Officer Craig so that he, defendant, could perform some field sobriety tests. Defendant did so. Then, when defendant reached Officer Craig, defendant turned around and put his hands behind his back as if preparing to be handcuffed.

On cross-examination, Sgt. Yanz admitted that, prior to pulling defendant over, he, Sgt. Yanz, had not observed defendant committing every traffic violation associated with drunk driving. For example, Sgt. Yanz admitted that he had not seen defendant brake erratically, straddle the road's center line, or swerve in his lane. Sgt. Yanz conceded that, before observing defendant hit the curb, he, Sgt. Yanz, had observed only one traffic violation, namely, the nonfunctioning headlight. And Sgt. Yanz acknowledged that, when he initially made contact with defendant, defendant did not slur his words or gesture wildly. Sgt. Yanz further acknowledged that defendant had no trouble retrieving his identification. In addition to these concessions, Sgt. Yanz admitted that, when he filed a report after defendant's arrest, he, Sgt. Yanz, did not specifically indicate that he had smelled alcohol coming from the driver's side window of the car; rather, he said only that he had smelled alcohol coming from the car. (When he smelled this, however, Sgt. Yanz had been standing by the driver's side of the car.) Sgt. Yanz also acknowledged that, when defendant stepped out of the car, he did not fall down, stumble, or lean on the car for support. Nor did he urinate in his pants. In short, defendant had no difficulty getting out of the car. Also, when he walked over to Officer Craig, defendant walked like a "normal" person.

After defendant walked over to Officer Craig, Sgt. Yanz spoke with the other people in the car defendant had been driving. The car belonged to defendant's fiancée, and Sgt. Yanz determined that she and the other two passengers were too drunk to drive.

Meanwhile, Officer Craig prepared to administer field sobriety tests to defendant. According to Officer's Craig's testimony, at the time, he was standing on the sidewalk, about five feet behind defendant's fiancée's car. The weather was cool, but not cold. It was "long sleeves" weather. The night was clear and the ground was dry.

When defendant reached Officer Craig, defendant placed his hands behind his back, but Officer Craig informed defendant that he was not under arrest. That said, Officer Craig noticed that defendant's eyes were bloodshot and glassy and that there was a strong odor of an alcoholic beverage on defendant's breath. Also, defendant's speech was "slightly" slurred. Officer Craig recognized the slight slurring because, unlike Sgt. Yanz, Officer Craig had had prior contact with defendant and knew what he normally sounded like. Officer Craig asked defendant where he had been that evening. Defendant said he had been at the Wheaton Bowl, a local bowling alley, restaurant, and bar. He also said that, while there, he drank only one beer. After receiving this answer, Officer Craig was ready to start the field sobriety testing.

This was not Officer Craig's first time administering field sobriety tests. In fact, after receiving extensive training in such testing, Officer Craig had performed field sobriety tests on "probably close to a hundred" people. He had also observed thousands of people under the influence of alcohol. From all of this training and experience, Officer Craig said, he knew what to look for when administering the field sobriety tests.

What he looked for, in particular, were "clues" indicating that the suspect was under the influence of alcohol. In each test, the presence of a certain number of clues indicates that the suspect fails the test. Based on a count of these clues, defendant failed all three of the field sobriety tests Officer Craig gave him. These included the one-leg stand test, which requires the suspect to stand on one leg and count to a given number. Based on defendant's failing these tests--along with his

glassy, bloodshot eyes, slightly slurred speech, and strong odor of alcohol--Officer Craig concluded that defendant was under the influence of alcohol. So he told defendant he was under arrest for DUI, cuffed him, and took him to the Wheaton police station. There, defendant said he would not take a Breathalyzer test without his lawyer present. In the end, he never took the test.

On cross-examination, Officer Craig admitted that he could not name the specific words that defendant had slurred. Officer Craig also admitted that defendant had not evidenced every outward manifestation of being under the influence of alcohol. For example, although defendant swayed on his feet during the field sobriety testing, he did not fall to the ground. Nevertheless, Officer Craig reaffirmed his belief that defendant had failed the tests. Officer Craig denied that defendant had said he had any injuries that would prevent him from performing the tests. Nor did defendant say that he had any missing or wooden limbs, such as a wooden leg. Although Officer Craig said that he did not ask defendant about injuries and prostheses, Officer Craig said that defendant showed no outward signs of having any non-alcohol-related impairment to his test-taking ability. And, although Officer Craig acknowledged that defendant had been wearing workboots during the testing, Officer Craig said that these were not the kind of "high heels" that might prevent a suspect from performing well during the testing.

Defendant contradicted most of what the two police officers said. According to defendant, on the evening of his arrest, he had gone to meet his fiancée and the Besches at the Wheaton Bowl. He had taken a cab to get there, because his driver's license was revoked. While there, he did not drink much. In fact, because he did not feel well, he drank only about half a beer. Instead of drinking, defendant said, he ate three buckets of popcorn. The others, however, were "pretty smashed" by the time they left the Wheaton Bowl. But despite being intoxicated, defendant's fiancée got behind the wheel of her car and began driving. No sooner had she done so, however, than she

almost backed into a ditch. At that point, even though his license was revoked, defendant took over behind the wheel. Then the four drove off.

Not far down the road, defendant was pulled over by Sgt. Yanz. Before being pulled over, defendant said, he was driving well. Defendant denied striking the curb when he pulled over. Nevertheless, defendant conceded that he had said to his companions that he was "fucked" and "going to jail." Defendant said that he had said this only because he was driving without a valid license.

Defendant said he had no trouble getting out of his car and walking over to where Officer Craig waited to administer the field sobriety tests. Defendant said that, before he began the tests, Officer Craig (contrary to what he had testified to) asked defendant if he had any injuries or wooden legs that would prevent him from performing the tests. And, also contrary to Officer Craig's testimony, defendant said he informed Officer Craig that, in high school, he, defendant, had had knee surgery that had been necessitated by football injuries.

Despite his injuries, defendant said, he performed well on the field sobriety tests. He said that, after each test, Officer Craig said "good." Still, at the conclusion of the tests, Officer Craig placed defendant under arrest. However, according to defendant, Officer Craig did not tell defendant that he was being arrested for DUI. For his part, defendant said he assumed that he was being arrested for driving while his license was revoked. But after he arrived at the police station, Officer Craig asked defendant to take a Breathalyzer test. At that point, defendant realized he had been arrested for DUI. He was "shocked." He declined to take a Breathalyzer test without his lawyer present.

In closing arguments, the State argued that the evidence showed defendant was guilty of both DUI and DWLR. Defense counsel, meanwhile, argued that the evidence did not establish guilt

beyond a reasonable doubt of DUI. In particular, defense counsel highlighted the uncontradicted fact that defendant had not shown many of the common signs of drunkenness. Defense counsel also attacked Officer Craig's testimony that defendant had failed the field sobriety tests.

Turning to the DWLR charge, defense counsel conceded that defendant had driven with a revoked license. But defense counsel argued that defendant did so only because everyone else in the car was so intoxicated. For this reason, defense counsel argued that "public policy" counseled against finding defendant guilty of DWLR. As defense counsel put it:

"Was Mr. Barcik driving that vehicle while his license was revoked? Absolutely yes, absolutely. Does that mean you should find him guilty of that offense? Guess what? You today are the judges in this case. You today are the law in this case. You today can find that man not guilty of driving while license revoked, and on what basis, ladies and gentleman? Something that we call public policy. ***

*** 

Well, what do we have here, ladies and gentleman, which really, which really defines the public policy in Illinois? Should we allow a person[,] in this case Anita [defendant's fiancée], the owner of that vehicle, [to drive]? As a matter of fact, there is no dispute that she was unfit to drive. *** And that [the] []other *** occupants of that vehicle, the two men[,] were [un]fit to drive.

So should you as judges say[:] you know what, the public policy in Illinois should be make [them] drive, make [them] hit somebody, make [them] kill somebody[?] ***

***

You as judges in this case can say you know what *** if there is a [sober] person in the car, let them take the responsibility to make sure that no deaths occur, to make sure that no injury occurs. ***

***[U]nder the facts of this case, under the circumstances of this case, we are not going to find him guilty of driving while license revoked because we want to promote the public policy and say if you see somebody drunk and you're in the car, you better damn well take action to avoid injury to the citizens of the State of Illinois.

That's why I submit to you that you can go back there and find that man not guilty."

Defense counsel concluded: "Send a message that says *** we don't want people to be irresponsible and let drunk people drive, because there is no question Anita was drunk. There is no question that everybody else in that vehicle was unfit to drive. [Defendant] did the responsible thing. Don't make him a criminal for it."

The jury found defendant guilty of both DUI and DWLR. He filed, among other things, a postconviction petition, arguing that he had been denied the effective assistance of counsel. Specifically, defendant claimed that counsel was ineffective because he had not called as witnesses the Besches and defendant's fiancée. Defendant said these witnesses would have testified that he was not drunk on the night of his arrest. However, defendant did not attach to his petition affidavits from all three witnesses. Instead, without explanation, he attached affidavits only from himself and his fiancée.[1] In her affidavit, defendant's fiancée stated that defendant was "completely sober" and that he was driving because he was the only "completely sober" person in the car. She stated further

---

[1]Defendant stated only that he "[did] not have the affidavits from ***[the Besches;] however[,] they will provide affidavits to this court in support of this petition."

that defendant's counsel "informed [her] that he did not need [her] testimony to win [defendant's] trial." She concluded that "it was not right that [defendant] was charged with D.U.I. because he was entirely sober, and this is a fact."

The trial court summarily dismissed defendant's petition. In a written order setting out its decision, the trial court stated that, because defendant had not attached to his petition affidavits from the Besches, the trial court would not consider defendant's allegation that counsel was ineffective in not calling them as witnesses. However, the trial court stated that it did consider defendant's allegation that counsel was ineffective for not calling defendant's fiancée as a witness. The trial court found that that allegation did not state the gist of a meritorious claim of ineffectiveness. This was so, the trial court reasoned, because defendant's fiancée was defendant's fiancée, and because, according to defendant's testimony, she was highly intoxicated on the night of defendant's arrest. Defendant appealed that decision, and we dismissed his appeal for lack of jurisdiction. But the supreme court, in the exercise of its supervisory authority, ordered us to assume jurisdiction and to decide on the merits defendant's appeal from the dismissal of his postconviction petition.

II. ANALYSIS

The Act provides a remedy to defendants who have suffered substantial violations of their constitutional rights. People v. Edwards, 197 Ill. 2d 239, 243-44 (2001). When the death penalty is not involved, there are theoretically three stages to proceedings under the Act. People v. Boclair, 202 Ill. 2d 89, 99 (2002). However, in the present case, defendant's petition was dismissed at the first stage, so it is only this stage with which we are concerned. *At this stage, the trial court determines whether the defendant s allegations sufficiently demonstrate a constitutional violation that would necessitate relief. People v. Coleman, 183 Ill. 2d 366, 380 1998 . In making this determination, the court may dismiss the petition if it is not supported by affidavits, records, or other evidence, and does not explain the*

absence of such supporting material. 725 ILCS 5 122--2 West 2002 People v. Collins, 202 Ill. 2d 59, 66 2002 . Also, the court may summarily dismiss the petition if the court finds that the petition is frivolous or is patently without merit. 725 ILCS 5 122--2.1 a 2 West 2002 Coleman, 183 Ill. 2d at 379. A petition is "frivolous or patently without merit" if it does not state the gist of a constitutional claim. Edwards, 197 Ill. 2d at 244. We review de novo the first-stage dismissal of a postconviction petition. People v. Pendleton, 356 Ill. App. 3d 863, 866 2005 .

Here, defendant alleged in his petition that he did not receive the effective assistance of counsel. Specifically, he alleged that his counsel was ineffective for not calling his passengers to testify that he was not drunk on the night of his arrest. When in a postconviction petition a defendant attacks the competency of trial counsel for having failed to call or contact certain witnesses, the defendant must attach to his petition affidavits from those witnesses. People v. Arias, 309 Ill. App. 3d 595, 597-98 (1999). In this case, although defendant had three passengers--Duane Besch, Brian Besch, and defendant's fiancée,--defendant attached to his petition affidavits from only himself and one of his passengers, namely, his fiancée. Moreover, defendant did not explain in his petition why he had failed to attach affidavits from the other passengers. See 725 ILCS 5/122--2 (West 2002) ("The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached"). Therefore, defendant can succeed in his attack on counsel's competency only if counsel was ineffective for not calling defendant's fiancée as a witness. We turn now to consider this issue.

Both the United States and Illinois Constitutions guarantee a defendant the right to effective assistance of counsel. See U.S. Const., amend. VI Ill. Const. 1970, art. I, §8. The purpose of this guarantee is to ensure that the defendant receives a fair trial. Strickland v. Washington, 466 U.S. 668, 684-85, 80 L. Ed. 2d 674, 691-92, 104 S. Ct. 2052, 2062-63

*1984*. *The ultimate focus of the inquiry is on the fundamental fairness of the challenged proceedings.* *Strickland*, *466 U.S. at 696, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.* *However, there is a strong presumption of outcome reliability, so a defendant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.* *Strickland*, *466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.* *To do so, the defendant must establish both 1 that counsel's performance was deficient and 2 that the deficiency prejudiced the defense.* *Strickland*, *466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.* Failure to establish either prong is fatal. Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

With regard to the second prong, the burden is on the defendant to affirmatively prove prejudice. *Strickland*, 466 U.S. at 693, 80 L. Ed. 2d at 697, 104 S. Ct. at 2067. To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, *466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, *466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.*

*Here, even assuming counsel was deficient for not calling defendant's fiancée, defendant's claim would still fail because defendant cannot establish prejudice.* *To see why this is so, we will consider her testimony with regard to each of the crimes with which defendant was charged.*

*First, as to DWLR, defendant admitted that he drove while his license was revoked.* *However, defense counsel argued that defendant should nevertheless be found not guilty.* *Counsel argued that this was so because defendant had to drive in order to protect the public from his drunken fiancée.* In light of the evidence, this was the only argument counsel could make. See People v. Ganus, 148 Ill. 2d 466,

473-74 (1992) (where evidence of guilt was overwhelming, counsel was not ineffective for arguing

for jury nullification). *And the only support that defendant s fiancée could have given this argument was to*

*testify that she was too intoxicated to drive. But there was no dispute on this point. Indeed, Sgt. Yanz*

*himself testified that defendant s fiancée was too intoxicated to drive. Thus, there is no reasonable probability*

*that, had counsel called defendant s fiancée as a witness, the result of the DWLR proceeding would have been*

*different. In other words, defendant cannot show he was prejudiced by his counsel s decision. Strickland,*

*466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.*

*Second, as* to DUI, both Sgt. Yanz and Officer Craig testified that defendant appeared to be

intoxicated. Specifically, the officers testified that defendant smelled of alcohol and had bloodshot

eyes. Additionally, Officer Craig, who had had prior contact with defendant, testified that

defendant's speech was slightly slurred. And, although the officers admitted that defendant did not

exhibit every sign of drunkenness, Officer Craig testified that defendant failed every one of the field

sobriety tests he was given. Despite all of this evidence, defendant argues that counsel's decision not

to call defendant's fiancée amounted to ineffective assistance. We disagree.

To be sure, as defendant points out, counsel's decision not to call defendant's fiancée left

defendant's claim of sobriety uncorroborated. As defendant also points out, counsel may be deemed

ineffective if counsel fails to call a witness who could corroborate an otherwise uncorroborated

defense. See People v. Brown, 336 Ill. App. 3d 711 (2002 . *Here, however, counsel was not ineffective*

*for not calling defendant s fiancée. This is because, as with the DWLR proceeding, there is no reasonable*

*probability that, had counsel called defendant s fiancée, the result of the DUI proceeding would have been*

*different. That is, defendant cannot show that counsel s not calling defendant s fiancée prejudiced defendant.*

*Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.*

There are two important reasons why this is so. The first reason is that, because of her relationship to defendant, defendant's fiancée likely would not have been considered a credible witness. See People v. Deloney, 341 Ill. App. 3d 621, 635 (2003) (rejecting a claim of ineffectiveness where the alibi witnesses that counsel did not call were defendant's cousins and, as such, their credibility may have carried little weight; People v. Dean, 226 Ill. App. 3d 465, 468 (1992) (rejecting a claim of ineffectiveness where all three of the potential alibi witnesses may have been related to codefendant, and thus, their credibility may have carried little weight"). The second reason is that, because of her intoxication on the night of defendant's arrest, defendant's fiancée's perception of defendant's condition that night probably would not have carried much weight with the jury. Defendant argues that just because his fiancée was too intoxicated to drive, does not mean that she was too intoxicated to perceive how much he had to drink and whether he was intoxicated. Perhaps not. But her intoxication likely would have undermined the weight the jury gave to her testimony. For both of these reasons, defendant has not shown that he was prejudiced by counsel's decision not to call defendant's fiancée.

In an effort to avoid the above conclusion, defendant argues that Brown supports his claim of ineffectiveness. We disagree. In Brown, the defendant filed a postconviction petition, arguing, among other things, that he could not have committed the murder he was convicted of committing, because, at the time of the crime, he was not in the same city as the victim. Brown, 336 Ill. App. 3d at 714-15. In his petition, the defendant further claimed that his lawyer had not permitted him to testify and had failed to call three alibi witnesses who would have testified that the defendant was not in the same city as the victim at the time of the crime. The defendant's petition was accompanied by affidavits from both himself and the three witnesses. Brown, 336 Ill. App. 3d at 715. In their affidavits, two witnesses averred that they had contacted the defendant's lawyer and informed him of

the testimony they could offer, but the defendant's lawyer had nevertheless failed to call them as witnesses. Brown, 336 Ill. App. 3d at 718-19. The court held that, based on counsel's allegedly preventing the defendant from testifying and on counsel's failing to call crucial witnesses, the defendant's petition sufficiently stated a claim of ineffective assistance of counsel. Brown, 336 Ill. App. 3d at 720.

Brown is readily distinguishable from the present case. To begin with, there defense counsel allegedly prevented the defendant from exercising his constitutional right to testify. No similar claim is made here; in fact, defendant did testify. More importantly, defendant's testimony aside, as discussed above, it is clear here that the testimony of defendant's fiancée likely would have added little to defendant's defense. Again, with regard to DWLR, her testimony was unnecessary; with regard to DUI, her testimony likely would have been of little weight in light of both her relationship to defendant and her intoxication. By contrast, in Brown, there was no suggestion that the alibi witnesses had credibility problems or would have offered cumulative testimony. Therefore, Brown does not undermine the conclusion that defendant cannot establish prejudice as a result of his counsel's decision not to call defendant's fiancée.

We find additional support for this conclusion in Deloney. There, following his conviction of first-degree murder, the defendant filed a postconviction petition, alleging, among other things, that his counsel was ineffective for not calling two potential alibi witnesses. Deloney, 341 Ill. App. 3d at 635. The court rejected the defendant's claim. In doing so, the court reasoned that the witnesses were the defendant's cousins and, as such, their credibility would have been suspect. Deloney, 341 Ill. App. 3d at 635. The court also reasoned that their testimony could have contradicted the defendant's own alibi claim. Thus, the court found that the defendant could not establish that he had received ineffective assistance. Deloney, 341 Ill. App. 3d at 635. Neither can

˘14˘

defendant do so here. First, the credibility of defendant's fiancée was clearly suspect. Second, her perception was questionable. Third, although unlike in <u>Deloney</u> her testimony would not have directly contradicted anything defendant said, at least with regard to DWLR it would not have added anything. Thus, here, like in <u>Deloney</u>, defendant cannot establish ineffectiveness.

To summarize, defendant cannot establish that he was prejudiced by counsel's decision not to call defendant's fiancée. As to the DWLR charge, her testimony was completely unnecessary. As to the DUI charge, her testimony likely would have carried little weight. Because defendant cannot establish prejudice, he cannot establish ineffectiveness. See <u>**Strickland**</u>, **466 U.S.** at **687, 80 L. Ed. 2**d at **693, 104 S. C**t. at **2064.** Therefore, the trial court correctly summarily dismissed defendant's petition.

### III. CONCLUSION

For the reasons stated, we vacate our prior decision in part and affirm the judgment of the circuit court of Du Page County.

Affirmed.

CALLUM and GILLERAN JOHNSON, JJ., concur.