THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LOUIS WILLIAMS, Defendant-Appellant.

First District (6th Division)   Nos. 1—89—1072, 1—91—3928 cons.

Opinion filed September 3, 1993.

Margaret Byrne, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Celeste Stewart Stack, Special Assistant State's Attorney, and Renee Goldfarb and William D. Carroll, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GIANNIS delivered the opinion of the court:

Defendant, Louis Williams, was convicted following a bench trial of two counts of murder (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(2)) in connection with the killing of James Atkins and with two counts of attempt (first degree murder) (Ill. Rev. Stat. 1987, ch. 38, par. 8—4) in connection with the shootings of Raymond Spain and Darryl Davis. Following conviction, defendant was sentenced to consecutive penitentiary terms of 40 years for the murder of Atkins and two consecutive terms of 20 years for the attempted murders of Spain and Davis.

On appeal, defendant raises the following issues for review: (1) whether he was denied the right to effective assistance of counsel; (2) whether the State presented evidence sufficient to prove defendant guilty beyond a reasonable doubt; (3) whether the trial court abused its discretion in sentencing him to a total prison term of 80 years; and (4) whether the trial court committed error in dismissing defendant's post-conviction petition.

The charges against defendant stemmed from a shooting on April 17, 1987, in which James Atkins was killed, and Darryl Davis and Raymond Spain were wounded. Six suspects were initially charged in the shooting. Defendant's attorney also represented defendant's brother, Anthony Williams, and Anthony Thomas in proceedings related to the shooting. The charges against defendant's brother were ultimately

dropped by the State. Anthony Thomas was subsequently convicted by a jury, along with a codefendant, Gerald Jeter, and those convictions were recently affirmed, although the case was remanded for new sentencing hearings. (*People v. Jeter* (1993), 247 Ill. App. 3d 120.) Another defendant, La Vance Parson, was also convicted for his part in the shooting and his conviction was affirmed, although the case was remanded for clarification of Parson's sentence. *People v. Parson* (1993), 249 Ill. App. 3d 1021.

Defendant waived his right to a jury trial. In addition, prior to trial, defendant's attorney stipulated to much of the testimony received in the *Jeter* trial except for those portions of testimony relating to in-custody statements made by Anthony Thomas and Gerald Jeter:

> "[T]hat stipulation is that all the witnesses who testified in the People's case against defendant Anthony Thomas and the defendant Gerald Jeter, their direct-examination, cross-examination is part and parcel of the evidence against the defendant before the bench Louis Williams, with the exception of testimony of Assistant state's Attorney Leighton, regarding statements of Anthony Thomas and Gerald Jeter, and testimony of Anthony Thomas and Gerald Jeter, and testimony of Detective Allen Szudarski, regarding statements of Anthony Thomas and testimony of Youth Officer Morris, the portion of his testimony relating to statements of Anthony Thomas and Gerald Jeter."

The relevant facts adduced from the stipulated testimony can be briefly summarized. On April 17, 1987, at approximately 1 a.m., Raymond Spain, his girlfriend Yolonda Stewart, and six friends went to visit Rose Williams at her home on the eighth floor of a Chicago housing project. (Rose Williams is not related to defendant.) Three of their group were on leave from duty in the United States Army and were visiting Chicago on a four-day pass.

Police officer Szudarski testified that from previous investigations he knew the building where Rose Williams lived to be controlled by a street gang, the Black Gangster Disciples. One member of the victims' group, Ronald Daney, testified that he had been a member of a rival gang, the Del Vikings. At approximately 1:45 a.m., the group left Ms. Williams' apartment and took the elevator down to the first-floor lobby. Shortly after stepping off the elevator the group was repeatedly fired on from behind. In the chaos, several members of the group began running for the exit. Once outside, however, the gunshots continued from various directions and the group split up. One witness testified that as many as 30 shots were fired. As noted,

James Atkins died from his injuries. Raymond Spain and Darryl Davis were seriously wounded.

Shortly after the shooting, Rose Williams gave defendant's name and address to police as the man she saw from her eighth-floor window shooting a gun shortly after her friends left her apartment. According to Ms. Williams, defendant, whom she had known for about a year and whom she saw approximately once a day, was crouched down with his knees bent and arms outstretched but joined at the hands. She testified that the area from where defendant shot was well-lit, despite the fog and time of night. She also described the view from her window as being a "birdeye view" and indicated that defendant wore a blue and white jacket, dark-colored pants and a dark hat. She further indicated that she could see sparks coming from the gun as defendant fired three times. The next day the police asked Ms. Williams if she could identify defendant from a photograph. She indicated that she could and then identified defendant from a single picture given to her by the police.

Police officer Hamilton testified that he first spoke with Rose Williams outside the building where the shooting took place and that he and Ms. Williams subsequently went to her eighth-floor apartment, where he looked out her bedroom window. He testified that the night was foggy, but that the fog was well above the building and that the view to the ground was pretty clear. He estimated that the window was approximately 60 feet from the ground. He also testified that he could see several of his fellow officers and stated that he could recognize them from the window.

Defendant's counsel cross-examined both Ms. Williams and Officer Hamilton. During cross-examination, counsel established that Ms. Williams had never spent significant time in defendant's presence, that the weather was foggy, that there were shadows and that many people live in the building. He also established that Ms. Williams' testimony differed from her police statements in that the police reports indicated that she had seen her friends running from the scene. At trial, she denied seeing her friends from the window.

After Officer Hamilton's testimony, the State rested and defendant's counsel made a motion for a directed verdict which was denied. Defense counsel then indicated that he was waiting for a witness and the court ordered a recess. After recess, however, defense counsel answered that he was ready for closing argument. During closing he argued that the trial court should use its common sense to conclude that it was not possible to identify someone from an eighth-floor window and suggested that the judge could look out the courtroom window

for himself to see that this was the case. He also argued that Rose Williams' identification, under the facts of the case, was insufficient to convict defendant without some corroborative evidence, of which there was none. Following the State's rebuttal argument, the trial court found defendant guilty of all charges.

Defendant subsequently filed a petition for post-conviction relief and much of defendant's support for his claim of incompetency of counsel lies in documents used to support this petition. Included with the petition was an affidavit of defendant's trial counsel in which counsel stated that he did not interview Rose Williams before trial because police reports indicated that Williams had observed the shooting from eight stories above the scene and that the night was foggy. He also indicated that, rather than go to the scene of the crime and determine for himself whether it was possible to identify the defendant from that height, he viewed the street from the eighth floor of the courthouse and concluded that the trial judge "could use his common sense as to how difficult it would be for Rose Williams to identify someone from that height." In addition, defendant's counsel indicated in his affidavit that he advised defendant to stipulate to certain testimony from the *Jeter* trial because this evidence did not implicate defendant.

Also with defendant's petition was a photograph and affidavit of a private investigator hired following defendant's conviction. The photograph purports to be taken from the window where Rose Williams testified she had observed defendant firing a gun and shows two blurry individuals standing on the pavement below. The private investigator stated in the affidavit, "[e]ven though I know [my assistant] well, I was unable to recognize him as I looked down toward him from apartment 809."

Next, defendant directs the court to an affidavit from Rose Williams dated October 1, 1991, which was also attached to his petition. In Ms. Williams' affidavit she recanted her identification of defendant and stated that at the time of the shooting she based her identification merely on the clothing she knew defendant to be wearing at the time. She also stated that since the shooting, and after defendant had been convicted and had begun serving his sentence, she had seen on the street a person who she believes actually did the shooting.

Final exhibits included with the petition were affidavits of Muriel Sutton and Cassandra Murray. Both affiants stated that they were with defendant at the time of the shooting. Both stated that they spoke with defendant's counsel and offered to testify on his behalf, but were never called by counsel to testify.

Defendant initially contends that he was deprived of the right to effective assistance of counsel where his attorney failed to file a motion to suppress the identification of Rose Williams, the only witness to identify defendant; failed to interview Rose Williams before trial; failed to vigorously cross-examine Rose Williams; failed to vigorously cross-examine police officer Hamilton, who testified as to his ability to identify persons from the place where Rose Williams identified defendant; failed to visit the scene of the crime; failed to present evidence as to the difficulty of making a positive identification from the distance at which Rose Williams observed the shooting; failed to call two witnesses who defendant claims would have alibied him at the time of the shooting; stipulated to testimony which implicated his client in the shooting; and failed to pursue disqualification of himself based upon a conflict of interest.

Defendant can prevail on these claims, however, only if he is able to show that his counsel was actually incompetent, as reflected in the actual performance of the attorney in his duties as trial attorney, and then only if this incompetence produced substantial prejudice to the defendant without which the trial result would probably have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 525-26.) Defendant is entitled to competent, not perfect, representation. (*People v. Eddmonds* (1984), 101 Ill. 2d 44, 69.) In reviewing the question of attorney competency, a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable legal assistance. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.

Moreover, the question of whether a defense counsel's conduct falls below the level of competency is determined from the totality of counsel's conduct at trial. (*Eddmonds*, 101 Ill. 2d at 69; *People v. Murphy* (1978), 72 Ill. 2d 421, 437.) Errors in judgment or trial strategy do not establish incompetency (*Eddmonds*, 101 Ill. 2d at 70), and courts ordinarily will not second-guess defense counsel's judgment and trial strategy. (*People v. Hattery* (1985), 109 Ill. 2d 449, 460.) In addition, defendant is required to show that there was a reasonable probability that, but for his attorney's unprofessional errors, the result of the trial would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

■ Defendant first argues that his trial counsel was incompetent for failing to litigate a motion to suppress Rose Williams' identification of defendant based upon what defendant characterizes as a suggestive use by police of defendant's photograph. It must be noted,

however, that the question of whether to file a motion to suppress evidence is usually a question of trial strategy that has no bearing on the question of attorney competency. *People v. Davidson* (1990), 196 Ill. App. 3d 634, 638; *People v. Atkins* (1987), 161 Ill. App. 3d 600, 609; *People v. Conley* (1983), 118 Ill. App. 3d 122, 129-30.

In addition, defendant fails to convincingly argue that a motion to suppress Rose Williams' identification of him would have been successful. At the time the photograph was shown to Ms. Williams she had already told the police the name and address of the man she witnessed shooting a gun in the courtyard below her window based upon her acquaintance with him. Defendant fails to explain how the showing of his photograph to Rose Williams tainted her prior identification. Moreover, it should be noted that, at the close of the State's case, defendant's trial counsel made a motion for a directed verdict and raised the same issue now before us. Trial counsel cited the only Illinois Supreme Court authority now cited by defendant's counsel on appeal, *People v. Holiday* (1970), 47 Ill. 2d 300. The trial court denied the motion. Defendant offers no reason for us to conclude that a pretrial motion would have resulted in the suppression of Ms. Williams' identification when his counsel's motion at trial was denied.

Also, defendant has made no showing that Ms. Williams' identification of defendant should have been suppressed by the trial court even were it assumed that the police procedure used in this case was improperly suggestive. In such cases the test of admissibility is whether the unnecessarily suggestive identification was sufficiently reliable to allow admission of the identification into evidence. (*People v. Graham* (1989), 179 Ill. App. 3d 496, 504-05.) Indeed, the supreme court has expressly stated, "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*Holiday*, 47 Ill. 2d at 307-08.) Reliability is determined based on a number of factors, including: (1) the opportunity of the witness to view the suspect at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the suspect; (4) the level of certainty demonstrated at the time of the confrontation; (5) the length of time between the crime and the confrontation; and (6) any acquaintance with the suspect prior to the crime. (*People v. Manion* (1977), 67 Ill. 2d 564; *Graham*, 179 Ill. App. 3d at 504-05.) Based upon our review of Ms. Williams' testimony and a consideration of the six factors set out in *People v. Greer* (1980), 79 Ill. 2d 103, defendant cannot fairly argue that there

was a "very substantial likelihood of irreparable misidentification." *Holiday*, 47 Ill. 2d at 307-08.

■ Defendant next contends that his counsel was ineffective in failing to interview Rose Williams prior to trial. The failure to interview witnesses may indicate actual incompetence, particularly when the witness is known to trial counsel and the testimony of the witness may be exonerating. (*People v. Greer* (1980), 79 Ill. 2d 103, 123.) As in *Greer*, however, defendant fails to point to any potentially favorable testimony from Ms. Williams which his lawyer could have investigated to his client's benefit *at the time of trial*. While Ms. Williams has now, years later, signed an affidavit in which she indicates that her identification was only of the gunman's clothing which she knew matched clothing she had seen defendant wearing earlier in the day, this fact hardly qualifies as "exonerating."

Defendant also points to the following comments made by counsel at a pretrial hearing concerning a potential conflict of interest:

"If I can explain, previously I represented three defendants, two of them are the brothers Williams who are, according to my information and belief without going into the facts of the case not listed as shooters and have defenses which are similar."

Based on these comments alone, defendant claims that his counsel mistakenly believed he had not been identified as a shooter and that such a mistake prejudiced his defense. This argument is defective, however, as defendant himself has submitted an affidavit from trial counsel in which counsel states that he was aware of Rose Williams' potential testimony against his client prior to trial.

■ Defendant next argues that counsel failed to vigorously cross-examine Rose Williams and police officer Hamilton as to their ability to identify individuals on the ground. A review of the record indicates, however, that defendant's counsel did vigorously question both Ms. Williams and Officer Hamilton on their ability to observe individuals from the window. Both witnesses gave unequivocal responses as to their ability to see individuals clearly on the ground. In light of their responses, repeated questioning may have undermined any doubts the trial court may have harbored regarding the possibility of identification. Trial counsel's conduct in this regard did not, therefore, fall below an objective standard of reasonableness.

■ Next, defendant argues that his counsel's representation was ineffective because he failed to visit the scene of the crime. Again, however, defendant fails to convincingly argue that visiting the scene of the crime would have in any way influenced the outcome of trial.

The fact that defendant has now found a witness who is willing to testify to the fact that an identification was not possible from Ms. Williams' bedroom window does not change this fact. The same conclusion follows with regard to arguments made by defendant about counsel's decision not to present evidence regarding the difficulty of making a positive identification from the distance at which the witness observed the shooting. Rose Williams testified that she could clearly see defendant shooting three times. Officer Hamilton testified that the distance between the window and the ground was only 60 feet and that he could clearly see his colleagues whom he recognized working below. The trial court listened to this unequivocal testimony and necessarily found it to be credible. While it is easy to argue that defendant's counsel might have presented evidence indicating that such an identification was not possible, his failure to do so does not amount to ineffective assistance, particularly where defendant's counsel on appeal fails to convincingly argue this same point.

■ Next, defendant argues that his counsel was ineffective by failing to call two alibi witnesses, Muriel Sutton and Cassandra Murray. Both women signed post-trial affidavits in which they state that they were with defendant throughout the time of the shooting and that defendant was not involved. They also state that they spoke with defendant's trial counsel and that they offered to testify on defendant's behalf, but that counsel never contacted them following their discussions with him. Defendant on appeal notes that his counsel did list both women as potential witnesses in his answer to the State's discovery request. This argument is without merit as well, however, as the decision to call a potential witness is a matter of trial strategy best left to the attorney. (*Taylor v. Illinois* (1988), 484 U.S. 400, 98 L. Ed. 2d 798, 108 S. Ct. 646; *People v. Keys* (1990), 195 Ill. App. 3d 370, 373-74.) Defendant contends that the affidavits of Sutton and Murray establish that counsel was aware of the existence of these witnesses. Why they were not called is not part of the record (this omission from trial counsel's affidavit is unexplained), but it is entirely possible that the testimony, if in fact offered to counsel, may not have appeared credible to him. Indeed, while Sutton and Murray are listed as potential witnesses in defendant's answer to discovery, this document also indicates that counsel deliberately decided not to call them as this document, filed over three months before trial, states, "[t]he defendants will not assert the defense of alibi."

■ Defendant next complains that his counsel improperly stipulated to testimony which implicated him in the shooting. Defendant's counsel indicated in his affidavit that he advised defendant to stipu-

late to certain testimony from the *Jeter* trial because this evidence did not implicate defendant. As defendant now points out, however, included in the stipulation was stipulated testimony from the *Jeter* trial in which Detective Szudarski indicated that, at the time of his investigation, suspects Anthony Thomas, Gerald Jeter *and defendant* were believed to have had .32 caliber pistols, the same type of gun used in the shooting. The prosecution, defendant and trial court made no references to this stipulation during the course of the trial, however, and its inclusion appears to have been an insignificant oversight by defendant's counsel, not the type of error requiring a finding of attorney incompetence. *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 525-26.

■ Finally, defendant argues that his representation at trial was incompetent because his lawyer failed to pursue disqualification of himself based upon an alleged "actual conflict of interest." Defendant fails to articulate the nature of this conflict, however, or explain how it affected the outcome of his trial. Such charges are mere assertions which cannot support defendant's claim. (*People v. Richardson* (1974), 16 Ill. App. 3d 830; *cf. People v. Jones* (1988), 121 Ill. 2d 21, 28-29.) Defendant's claim that the trial court erred by failing to pursue a potential conflict was not raised in his opening brief and is therefore waived. 134 Ill. 2d R. 341(e)(7).

Defendant next argues that he was not proved guilty beyond a reasonable doubt based on insufficiency of the evidence against him. However, the relevant inquiry when addressing such a claim is whether any rational trier of fact could have found the essential elements of the crime. (*People v. Collins* (1985), 106 Ill. 2d 237.) The testimony of one witness if credible and positive is sufficient to convict, even if contradicted by the accused. (*People v. Clarke* (1971), 50 Ill. 2d 104, 110; *People v. Whaley* (1989), 184 Ill. App. 3d 459, 462.) It is not the duty or the privilege of a reviewing court to substitute its judgment for that of the trier of fact who observed the demeanor of the witness. *People v. Novotny* (1968), 41 Ill. 2d 401.

■ In this case, defendant was identified at the scene of the murder, firing a gun three times in the direction of fleeing victims. The eyewitness who identified defendant had known him for approximately one year and testified that she saw him on a daily basis. Ms. Williams promptly reported defendant's identity to the police and testified that she had a "birdeye" view of the crime. Her ability to observe the shooting was corroborated by police officer Hamilton. Under these facts defendant's conviction must be upheld.

■ Defendant next attacks his sentencing. Defendant was sentenced along with three others who were also involved in the shooting. Defendant specifically argues that certain of the trial judge's statements during sentencing indicate that the judge improperly failed to consider evidence in mitigation (Ill. Rev. Stat. 1987, ch. 38, par. 1005—4—1(a)), or the possibility of defendant's ultimate rehabilitation (Ill. Const. 1970, art. I, §11).

Just prior to sentencing defendants, the trial judge stated:

"First, I think it ought to be noted for the record that there has been references made by the attorneys, both the prosecution and for the defense, concerning punishment reflecting the possibility of rehabilitation. And I think it ought to be clear in everyone's mind that it is the Court's judgment that a penal institution is not a place where rehabilitation takes place.

A penal institution is a place where people who have been convicted of crimes are sent in execution of their sentence.

Early on it was considered that rehabilitative programs would take place during the incarceration period. But the Court is not aware of any American penal institution that lives up to the responsibility of having programs that cause people in their custody to change their ways, and come in convicted felons and go out as people who are not going to commit any further crimes.

Any rehabilitation that takes place under the circumstances in the American institutions comes about only as a result of the individual inmates affirming that after execution of that sentence that inmate is not going to be involved in any other antisocial or illegal activity. There is no rehabilitation *** program that exists that is worthy of being named such in any of our penal institutions in the Court's judgment.

According[ly], I sentence these gentlemen today and it is not just them, but that has been my posture since I adopted this attitude, I will be sentencing purely on the basis of punishment. The sentence that I will impose will be punishment for the crimes that these men have been convicted of. And if rehabilitation takes place, fine.

Sit down.

It will be for punishment only."

Recently, in *People v. Parson* (1993), 249 Ill. App. 3d 1021, the appellate court considered a portion of the court's comments at sentencing and concluded that the trial court did not abuse its discretion. We note, however, that the remarks quoted in *Parson* did not explicitly

reflect an intention to ignore the defendant's potential for rehabilitation. In *People v. Jeter* (1993), 247 Ill. App. 3d 120, we considered the same comments quoted above and determined that the trial court had abused its discretion in basing sentencing upon its personal beliefs about the state of the prison system. We therefore follow the reasoning in *Jeter* and find that defendant's case must be remanded for re-sentencing. See *Jeter*, 247 Ill. App. 3d at 131-32.

■■■ Defendant's final argument is that the trial court committed error in dismissing his post-conviction petition for relief without a hearing. (See Ill. Rev. Stat. 1991, ch. 38, pars. 122—1 through 122—8.) Defendant filed his post-conviction petition for relief on October 9, 1991. Instead of including a signed verification with the petition, however, defendant's counsel inserted a blank verification and requested leave to substitute a signed verification as part of the petition's request for relief. At the hearing on the petition on November 6, 1991, defendant's counsel did not appear. In dismissing defendant's post-conviction petition, the trial judge simply stated, "Petition for post-conviction relief denied. Petition dismissed with prejudice." On December 5, 1991, counsel for defendant appeared before the trial court to move for leave to file defendant's signed verification page. The clerk of the court advised counsel that the petition had already been dismissed. Nonetheless, the trial court apparently granted defendant's motion to file the verification, although the record on appeal fails to substantiate this claim by defendant.

Defendant argues that it was error for the trial court to dismiss his petition without stating that defendant's claim was frivolous or patently without merit or specifying for the record the findings of fact and conclusions of law it made in reaching its decision. (Ill. Rev. Stat. 1991, ch. 38, par. 122—2.1(a)(2).) The State takes the position that defendant's petition was properly dismissed because it did not include defendant's verifying affidavit. In the alternative, the State argues that the failure of the trial court to specify its findings of fact and conclusions of law does not constitute reversible error because, under these facts, the court implicitly found that petitioner's claims were "frivolous" or "patently without merit" as required by the statute. The State also notes that specific findings of fact and conclusions of law by the trial court are not mandatory under the post-conviction statute. *People v. Porter* (1988), 122 Ill. 2d 64, 82-86 (statutory language indicating that trial court "shall" specify findings of fact and conclusions of law before dismissing post-conviction petition is directory only; trial court's failure to do so does not require reversal).

We need not address either the State's or defendant's arguments on this issue, however, as the sole contention of defendant's post-conviction petition is that his counsel was ineffective and we have already determined that this claim is without merit.

Accordingly, for the reasons expressed above, defendant's convictions are affirmed. However, because we find the trial court abused its discretion in the manner in which it sentenced defendant, we remand for a new sentencing hearing.

Affirmed in part; vacated in part and remanded.

EGAN and RAKOWSKI, JJ., concur.