THIRD DIVISION
February 28, 2007

No. 1-04-1943

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 92-CR-16504 |
| | ) | |
| KEITH BROWN, | ) | Honorable |
| | ) | Colleen McSweeney Moore, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE THEIS delivered the opinion of the court:

Defendant appeals from the denial of his post-conviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2000)), after the trial court held an evidentiary hearing on one issue and granted the State's motion to dismiss on the remaining issues. On appeal, defendant contends that: (1) the trial court's failure to grant him a new trial is manifestly erroneous because he demonstrated that trial counsel was ineffective for failing to call a witness who would impeach the credibility of the State's key eyewitness; (2) he was entitled to an evidentiary hearing where he made a substantial showing that trial counsel was ineffective for failing to present two alibi witnesses and to investigate a statement against penal interest that another individual committed the offense; (3) he was entitled to an evidentiary hearing where he made a substantial showing of a free-standing claim of actual innocence; and (4) he is entitled to additional sentencing credit.

1-04-1943

Previously, in People v. Brown, No. 1-04-1943 (2006) (unpublished order under Supreme Court Rule 23), we affirmed the judgment of the circuit court. In doing so, we held that the sentencing credit issue was not cognizable under the Act and was forfeited. Subsequently, pursuant to the supreme court's supervisory order, we vacated our original order, and allowed the State another opportunity to address the sentencing credit issue on the merits. For the following reasons, we affirm the judgment of the circuit court and order the mittimus corrected to reflect the additional sentencing credit requested.

BACKGROUND

The facts adduced at defendant's bench trial have been detailed by this court previously on direct appeal. According to the evidence presented, defendant's convictions arose from the fatal shooting and robbery of Gregory Jones on June 27, 1992, in a gangway near Erie Street and Cicero Avenue in Chicago. Carl Taylor implicated defendant in the shooting. At about 9:30 a.m., Taylor saw his friend Jones and defendant from about 20 to 25 feet away as they exchanged a plastic bag for currency. Defendant then produced a gun, telling Jones to give him the "shit." Defendant grabbed the bag, then shot Jones three times as Jones attempted to flee. After Jones fell, defendant turned him over, rifled through his pockets, took some money and something from Jones' shoe. Defendant fired at Taylor twice before he fled. Taylor then observed Neal Blake, who was acting as a "look-out" for Jones, in a struggle with codefendant Anthony Smith before Smith and defendant ran to a parked, cream-colored Pontiac Bonneville. He then saw the car later that day with detectives in the alley between Homan Avenue and Carroll Avenue. The following day, Taylor identified defendant in a lineup.

- 2 -

1-04-1943

Taylor stated that he had seen defendant on two other occasions prior to the shooting, but on cross-examination, he stated he could not recall whether it was after or before the Jones shooting. He told the police that he had seen defendant before the incident. The first time he saw defendant was with some other Black Soul street gang members. He was not introduced to him by anyone. He was told that defendant went by the nickname "Mookie" by some Black Souls who were friends of his named "Black" and "Hoak." Taylor stated that "Hoak" was a nickname for Ernest Daniels. Taylor explained that his gang, the Cicero Insanes had a dispute with the Black Souls and that the Black Souls had "jumped on" Taylor. He asked Daniels "who was they goin' send at [him]?" and Daniels told him that defendant was "the shooter" for the Black Souls. Taylor could not recall when that conversation took place. He stated that the second time he saw defendant was on Erie Street, but could not recall the date.

Antwan Coffie was in the area of West Erie street on the morning of the occurrence at about 9:30 am. when he heard 3 to 4 shots. He observed Smith and Blake "tussling," saw Blake slip out of his jacket and run off after they fought. Coffie then looked southbound down Erie and saw someone about 50 feet away holding something in his hand standing over another individual. The man then ran to a cream-colored Pontiac Bonneville. Coffie was unable to identify defendant as the man leaning over Jones.

Neal Blake was acting as "security" for Jones while he was in the gangway selling drugs at about 9:45 a.m. He saw Jones come running past him followed by a man with a gun in his hand. The man shot Jones. Blake saw the side of the man's face, but was not able to get a good look at him. As Blake was running, he was grabbed by a man who he later identified in court as

Smith. Blake struggled out of his jacket and ran home.

Anthony Pettigrew lived on West Erie Street. On the morning of the occurrence, at about 9:45 a.m., he looked out his window after he heard gunshots. Then, for a minute he watched defendant, who was holding a revolver while leaning over a body on the ground. As Pettigrew walked out his front door, he saw defendant running from about 15 feet away. Defendant looked up facing Pettigrew, and Pettigrew got a quick glance at him. He made an in-court identification that defendant was the man he saw with the revolver.

Paramedics and police arrived at the scene at 9:48 a.m. Officer Howard Lodding testified that Taylor told him that defendant shot Jones five times and that defendant jumped into a Pontiac, but Taylor did not tell him that defendant shot twice in Taylor's direction.

Detective Luis Munoz testified for the defense that Pettigrew told him he was outside when he saw defendant standing over Jones. Pettigrew did not tell him that he observed defendant for over a minute from his window. Nor did Taylor tell Munoz that defendant shot at him twice. Taylor told him that defendant was known as "Mookie" and that he had been "seeing him around" for several years. Drametta Todd knew defendant, his family and friends. She had never heard any family or friends call defendant by the name "Mookie."

Following the bench trial, defendant was convicted of three counts of first degree murder, one count of armed robbery, armed violence, and conspiracy to commit armed robbery, and six counts of unlawful use of a weapon by a felon. He was sentenced to 80 years' imprisonment. At the sentencing hearing, defendant made the following statement in allocution: "I am sorry. I wish I hadn't done it myself."

On direct appeal, we affirmed his conviction for first degree murder, armed robbery, and unlawful use of a weapon (UUW) by a felon. We vacated his convictions on the remaining counts of first degree murder, armed violence, conspiracy to commit armed robbery, and the remaining counts of UUW by a felon. We remanded for resentencing on the armed robbery and UUW convictions. People v. Brown and Smith, Nos. 1-93-3519 and 1-93-3520 (consolidated) (1995) (unpublished order under Supreme Court Rule 23). On remand, defendant was sentenced to an additional concurrent prison term of 37 years.

On September 20, 2000, defendant was granted leave to file a late *pro se* petition for relief under the Act (725 ILCS 5/122-1 *et seq.* (West 2000)), which the circuit court summarily dismissed without appointing counsel. We reversed the summary dismissal and remanded for further proceedings consistent with sections 122-4 through 122-6 of the Act (725 ILCS 5/122-4 through 5/122-6 (West 2000)). People v. Brown, No. 1-00-4081 (2001) (unpublished order pursuant to Supreme Court Rule 23). Thereafter, post-conviction counsel filed a supplemental post-conviction petition and the State filed a motion to dismiss the petition, arguing that petitioner failed to establish a substantial violation of his constitutional rights.

After a hearing on the motion to dismiss, the trial court granted defendant an evidentiary hearing on the issue of whether his trial counsel was representing Ernest Daniels at the time of defendant's trial, and whether this representation created a conflict of interest which caused trial counsel not to call Daniels as a witness who would impeach Taylor's credibility. The facts

relevant to that hearing are discussed below. Additionally, the trial court granted the State's motion to dismiss the remaining issues without an evidentiary hearing. At the conclusion of the evidentiary hearing, the trial court denied defendant's request for post-conviction relief, finding that counsel's performance was not tainted by a conflict of interest and that he was not otherwise prejudiced by any failure to call Daniels. Defendant filed a timely appeal.

ANALYSIS

We initially address defendant's contention with regard to his third-stage post-conviction proceedings. A ruling by the trial court after holding an evidentiary hearing in connection with a petition filed under the Act must be affirmed unless it is manifestly erroneous. 725 ILCS 5/122-6 (West 2000); People v. Pitsonbarger, 205 Ill. 2d 444, 456, 793 N.E.2d 609, 612 (2002). "Manifest error" is error that is clearly evident, plain, and indisputable, for purposes of our review of the trial court's judgment on a post-conviction petition. People v. Morgan, 212 Ill. 2d 148, 155, 817 N.E.2d 524, 528 (2004).

Defendant contends that the denial of his request for a new trial is manifestly erroneous because the testimony at the evidentiary hearing established that trial counsel was ineffective for failing to call Ernest Daniels to impeach Carl Taylor's testimony that Daniels was the person who told him that defendant went by the name "Mookie" and was "the shooter" for the Black Souls street gang. He further argues that this testimony would have irreparably damaged Taylor's credibility at trial.

To be successful on his claim, defendant must satisfy the two-prong test established in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Under Strickland, a defendant must prove that defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance prejudiced the defendant by creating a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Strickland, 466 U.S. at 687-88, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65; People v. Enis, 194 Ill. 2d 361, 376, 743 N.E.2d 1, 11 (2000). A reasonable probability is a probability sufficient to undermine confidence in the result of the trial, namely, that counsel's deficient performance rendered the outcome unreliable or the proceeding fundamentally unfair. Enis, 194 Ill. 2d at 376, 743 N.E.2d at 11. The failure to satisfy either the deficiency prong or the prejudice prong of the Strickland test precludes a finding of ineffective assistance of counsel. Enis, 194 Ill. 2d at 377, 743 N.E.2d at 11. With these principles in mind, we consider defendant's claims regarding his counsel's performance, and discern no manifest error.

At trial, during cross-examination, counsel elicited testimony from Taylor that defendant was a member of a rival gang, that the two gangs were in a dispute and that Taylor had been "jumped" by members of that gang. Taylor had told the police that defendant went by the name "Mookie" and that he had been "seeing [defendant] around" for several years prior to the shooting, but when pressed by counsel, Taylor could not recall if those occasions were before the Jones shooting or after the shooting. His friend "Hoak," otherwise known as Ernest Daniels, told

him defendant went by the name "Mookie." Daniels had also led Taylor to believe that defendant was the "shooter" for the Black Souls street gang. Taylor could not recall when he had this conversation with Daniels.

Thereafter, in defendant's post-conviction and supplemental post-conviction petition, he alleged that trial counsel was ineffective in failing to call Daniels to refute Taylor's testimony at trial that defendant went by the name "Mookie" and was the "shooter" for the Black Souls. He further alleged that counsel represented Daniels in a separate matter, and therefore, the only reason why he did not call Daniels to testify was because of a conflict of interest.

At the evidentiary hearing, the evidence established that defense counsel had known Daniels for a number of years. Although he was involved in a case in which Daniels was a defendant at the time of defendant's trial, he did not represent Daniels at that time, and did not fail to call Daniels because of his prior relationship with him. He stated that he questioned Taylor about Daniels only because Taylor mentioned the nickname "Hoak" while testifying as to how he learned that defendant went by the name "Mookie." Counsel believed the testimony was harmful, and considered getting Daniels to impeach Taylor and probably tried to locate him, but presumed that he could not locate him. Instead, he called detective Munoz and Drametta Todd to impeach Taylor on the issue of whether defendant went by the name "Mookie." Daniels testified at the hearing that he never told Taylor that defendant went by the name "Mookie" or that he was the "shooter" for the Black Souls.

At the conclusion of the hearing, the trial court found that trial counsel did not fail to call Daniels because of a conflict of interest, but rather, that he tried to contact Daniels and could not reach him. Moreover, the court found that the issue whether defendant used the name "Mookie" was a collateral issue to whether he committed the shooting and that Daniels' testimony regarding this matter would not have affected the outcome of the trial.

The trial court's finding was not against the manifest weight of the evidence. Initially, we note that, on appeal, defendant concedes that there was no conflict of interest. Further, defendant has failed to establish the second prong of Strickland. Even if counsel was deficient for failing to call Daniels to impeach Taylor, there was no reasonable probability that, but for his performance, the result of the trial would have been different. We are mindful that when assessing the importance of the failure to impeach for purposes of a Strickland claim, "[t]he value of the potentially impeaching material must be placed in perspective." People v. Jimmerson, 127 Ill. 2d 12, 33, 535 N.E.2d 889, 898 (1989).

Here, in closing argument, counsel utilized the testimony elicited on cross-examination to attack Taylor's credibility by making the following arguments: (1) Taylor had a motive to lie because defendant was affiliated with a rival gang who had "jumped" him; and (2) Taylor was lying when he testified that he had seen defendant prior to the shooting because he was equivocal about the timing of his observations and could not recall when the conversation with Daniels took place. Calling Daniels to testify would have had little or no impeachment value with respect

to Taylor's motive to lie because Daniels' testimony would not have added support to defendant's motive theory and could have indeed weakened Taylor's testimony regarding their rival gang affiliations and the "bad blood" between the two gangs.

The value of Daniel's impeachment with respect to Taylor's familiarity with defendant was greater because it could have bolstered defendant's argument that Taylor was not familiar with defendant prior to the shooting, but the value is not enough to have created a reasonable probability that the outcome of the trial would have been different or undermine confidence in the outcome. Taylor's credibility was already impeached on that issue because he was unable to recall when the conversation with Daniels occurred. Additionally, regardless of whether Taylor was lying about his familiarity with defendant based on a conversation he had with Daniels, Daniels' testimony would have had minimal, if any, impact on Taylor's observations on the day of the occurrence. Namely, Taylor saw defendant conversing with Jones, committing the shooting, rifling through Jones' clothing and fleeing into the Pontiac with his co-defendant, and identified defendant in a line-up the next day. Additionally, a second witness, Pettigrew, identified defendant as the man standing over Jones moments after hearing gunshots. Two other witnesses corroborated the circumstances of the shooting. To the extent that defendant argues that significant portions of the witnesses' testimony were contradicted and inconsistent, this argument is barred by *res judicata*, as we rejected defendant's attack on the reliability of the witnesses on direct appeal. See People v. Deloney, 341 Ill. App. 3d 621, 631, 793 N.E.2d 189,

197 (2003).

Furthermore, defendant's cited case of People v. Salgado, 263 Ill. App. 3d 238, 635 N.E.2d 1367 (1994), is distinguishable. There, the court held that trial counsel was ineffective for failing to investigate impeachment by an eyewitnesses who testified at a prior trial of codefendants that he did not see defendant fire any shots when he then implicated defendant as the shooter at defendant's trial. Salgado, 263 Ill. App. 3d at 247, 635 N.E.2d at 1374. The value of the impeachment in Salgado was significantly higher than in the present case because it directly contradicted the eyewitnesses' testimony of his observations on the night in question and would affirmatively demonstrate the eyewitnesses' inability to correctly identify the defendant. Accordingly, for all of the foregoing reasons, defendant failed to meet his burden to establish the second prong of Strickland, and we cannot say that the trial court's denial of a new trial was manifestly erroneous.

To the extent defendant raises the argument that counsel's failure to call Daniels impacted his sentence leading to an excessive sentence, we find that defendant has waived this issue for failure to raise it in his post-conviction petition or supplemental post-conviction petition. 725 ILCS 5/122-3 (West 2000).

Defendant next raises a series of contentions related to counsel's deficient performance, arguing generally that the trial court erred in dismissing these other claims without an evidentiary hearing. At the second stage of the proceedings, the State is required to either answer or move to

dismiss the petition. 725 ILCS 5/122-5 (West 2002). The defendant is not entitled to an evidentiary hearing unless the allegations set forth in the petition, as supported by the trial record or accompanying affidavits, make a substantial showing of a constitutional violation. People v. Rissley, 206 Ill. 2d 403, 412, 795 N.E.2d 174, 179 (2003). In reviewing the sufficiency of the petition, all well-pleaded facts are taken as true, and the trial court's dismissal is reviewed *de novo*. People v. Coleman, 183 Ill. 2d 366, 378-79, 701 N.E.2d 1063, 1070-71 (1998).

Defendant contends that he is entitled to an evidentiary hearing on his claim that he received ineffective assistance of counsel based upon counsel's failure to present an alibi defense. At trial, there was some testimony that the shooting and robbery occurred in a gangway at Cicero Avenue and Erie Street at "approximately" 9:30 a.m. Defendant alleged that prior to trial, his mother, Claudia Brown, informed trial counsel that defendant and his girlfriend, Latonya Thompson, spent the night of June 26, 1992, at his mother's house, and that they did not leave her house until approximately 9:35 a.m. on June 27. Defendant also alleged that at approximately 9:30 a.m. on June 27, he and Thompson left his mother's apartment together. Thompson dropped him off on Homan Avenue and Walnut Street at approximately 9:45 a.m.

As support for this claim, he attached affidavits from Brown and Thompson. Brown avers that defendant and Thompson stayed overnight at her house and left on the morning of June 27, 1992 sometime between 9 a.m and 9:45 a.m. Thompson avers that she and defendant were at his mother's house and remained there until she dropped defendant off at the corner of Homan

Avenue and Walnut Street around 9:30 a.m. on June 27. She further avers that she was interviewed at her home by counsel, but was never called to testify. Additionally, defendant attached an affidavit from codefendant Anthony Smith who avers that defendant was not present when the offense occurred, and that he presented this information to counsel prior to trial, but was not called to testify. Post-conviction counsel reiterated defendant's allegations in the supplemental petition, but did not amend defendant's post-conviction petition with respect to this issue.

Initially, we reject defendant's assertion that he is entitled to an evidentiary hearing merely because we remanded this issue at the first stage of the proceedings, finding the "gist of a meritorious claim" as to Thompson's affidavit. At the second stage, the State has an opportunity to file a motion to dismiss, and defendant has a higher burden to establish a substantial showing that counsel was constitutionally deficient. 725 ILCS 5/122-5 (West 2000); People v. Edwards, 197 Ill. 2d 239, 246, 757 N.E.2d 442, 446 (2001).

Given defendant's higher burden, the State's motion to dismiss, and our continuing duty to scrutinize the record, the petitions, and the affidavits, we find that defendant has failed to establish a substantial showing of a constitutional violation. To prevail on this issue, defendant must again meet both prongs of the Strickland analysis. As part of that analysis, Strickland explains that,

> "strategic choices made after thorough investigation of law and

facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 690-91, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.

Here, defendant alleged in his petition that Brown had spoken to counsel and Thompson stated in her affidavit that she had been interviewed by counsel at her home. Where the possible alibi was disclosed to defense counsel, then, as Strickland instructs, we should give deference to counsel's decision not to present their testimony. People v. Thompkins, 161 Ill. 2d 148, 161, 641 N.E.2d 371, 377 (1994) (where defendant's wife disclosed possible alibi defense to counsel, deference was given to counsel's decision not to present her testimony); see also People v. Smado, 322 Ill. App. 3d 329, 335, 750 N.E.2d 233, 239 (2001); People v. Williams, 252 Ill. App. 3d 1050, 1059, 625 N.E.2d 275, 281-82 (1993) (finding that trial counsel was not ineffective for failing to call alibi witnesses where counsel had interviewed the witnesses).

Furthermore, Brown's testimony was that they left her house as early as 9 a.m. This testimony, when taken as true, is not unequivocally exculpatory because it does not account for

defendant's whereabouts after that time, and if they left her house around 9:30 a.m., it would contradict Thompson's statement which places defendant with her around the time of the shooting, and not with his mother. Additionally, we find several inconsistencies between defendant's allegations in his pleadings and the affidavits of Brown and Thompson regarding the timing of events. Defendant alleges that he left his mother's house at about 9:30 a.m. and was dropped off at approximately 9:45 a.m. whereas Thompson stated that she dropped defendant off at about 9:30 a.m. Furthermore, the record reflects that Thompson's affidavit would place defendant blocks from where the Pontiac Bonneville was seen shortly after the offense at Homan and Carroll Avenue. Given the inconsistent affidavits, the possible connection of the crime to defendant, and the several witnesses who testified that the offenses took place at around 9:45 a.m., counsel could have reasonably concluded after an interview that Brown and Thompson's statements were unreliable and potentially damaging.

With respect to codefendant Smith, we find that his affidavit is insufficient to merit further consideration. Smith was a codefendant who was tried simultaneously to defendant in a severed trial and was convicted of murder and armed robbery. Smith does not affirmatively aver that he would have testified to the contents of his affidavit at defendant's trial. An affidavit must not only identify the source and character of the evidence, it must also identify the availability of the alleged evidence. People v. Johnson, 183 Ill. 2d 176, 190, 700 N.E.2d 996, 1003 (1998). Here, Smith does not indicate that he would have waived his right against self-incrimination.

Accordingly, after scrutinizing the pleadings, the affidavits, as well as the State's motion to dismiss, defendant's claim of ineffective assistance of counsel for failure to call these witnesses to testify must fail.

We next address defendant's contention that his counsel was ineffective for failing to investigate a statement against interest made by Tyree West. Defendant supports his claim with affidavits from his sister, Vanessa Brown, and West's girlfriend, Vivian Clifton. Clifton avers that shortly after the shooting, West confessed to her that he was involved in a murder in which defendant had been wrongfully charged. Clifton told Brown who then contacted defense counsel. According to Clifton, counsel never contacted her to investigate the matter and did not call her to testify at trial.

As stated previously, to demonstrate ineffective assistance of counsel, defendant must meet the two prong test of Strickland. Here, defendant cannot show that counsel's performance was deficient or that there was a reasonable probability that the outcome of the trial would have been different had counsel investigated and sought to introduce West's statement against penal interest through Clifton. Defendant must establish that the witness's testimony would be relevant and admissible at trial. People v. Darby, 302 Ill. App. 3d 866, 873-74, 706 N.E.2d 1050, 1056 (1999). Generally, a third party's out-of-court statement that he committed a crime is hearsay and is inadmissible, even though the statement is against the declarant's penal interest. People v. Williams, 193 Ill. 2d 1, 19, 737 N.E.2d 230, 241 (2000). Nevertheless, where sufficient indicia

of reliability is shown, and where justice requires, such statements may be admitted under the statements-against-penal-interest exception to the hearsay rule. People v. Bowel, 111 Ill. 2d 58, 66, 488 N.E.2d 995, 1000 (1986), citing Chambers v. Mississippi, 410 U.S. 284, 302 93 S. Ct. 1038, 1049, 35 L. Ed. 2d 297, 313 (1973).

Whether a statement is sufficiently reliable depends upon various factors, including: (1) whether the statement is self-incriminating and against the declarant's interest; (2) whether it was made spontaneously to a close acquaintance shortly after the crime occurred; (3) whether it was corroborated by other evidence; and (4) whether there was an adequate opportunity to cross-examine the declarant. Williams, 193 Ill. 2d at 20, 737 N.E.2d at 241-42. Not all factors need to be present, but ultimately the question to be considered is whether the statement was "made under circumstances that provide 'considerable assurance' of its reliability by objective indicia of trustworthiness." Bowel, 111 Ill. 2d at 67, 488 N.E.2d at 1000, quoting Chambers, 410 U.S. at 300-01, 93 S. Ct. at 1048-49, 35 L. Ed. 2d at 311-12.

Here, defendant failed to plead facts to support the admission of the unsworn, oral declaration at trial. He does not allege in his petitions facts to show that the statement was corroborated by any other admissible evidence at trial or that the declarant was available or that his testimony was available for cross-examination. Nor does he allege facts to suggest that the statement had an objective indicia of trustworthiness. Post-conviction counsel did not amend the petition to allege further supporting facts. Rather, counsel makes the conclusory statement that

the statement "might have been admissible." On appeal, for the first time, defendant argues that West's statement was corroborated by the affidavits of Smith and codefendant David Robinson who both stated that West was present when the offense occurred and not defendant. Those affidavits were made in 1998 well after the trial. Accordingly, they could not form the basis of corroborating evidence at the time of trial. Consequently, the trial court would have been well within its discretion in finding the statement inadmissible. Therefore, defendant cannot establish that counsel's performance was deficient or that any deficiency would have undermined confidence in the outcome of the trial.

We next consider defendant's claim of actual innocence. Defendant alleges that codefendant David Robinson gave a statement to police implicating defendant in the crime in an attempt to avoid being charged with the crime, and Robinson avers in his affidavit that he willingly and freely "recants" his statement naming defendant as one involved in the incident. To win relief under a theory of actual innocence, the evidence adduced by the defendant must be newly discovered, material and noncumulative, and of such conclusive character that it would probably change the result on retrial. People v. Morgan, 212 Ill. 2d 148, 154, 817 N.E.2d 524, 527 (2004).

We find that the affidavit is insufficient and therefore not of such a conclusive character that it would probably change the result on retrial. Initially, Robinson was tried in a separate severed trial and was acquitted. The record establishes that his statement to police was not

admissible at defendant's trial and was never considered by the trier of fact. Accordingly, his affidavit is not a "recantation" of any evidence implicating defendant at trial. Furthermore, although Robinson states that defendant was not present during the occurrence, Robinson never states that he was present at the scene on the date of the occurrence or that he had first-hand knowledge of the shooting or robbery. Nor does he indicate the basis for any of his knowledge that defendant did not commit the crimes. Where the affidavit does not set forth specific facts to support that it is based upon personal knowledge, it is insufficient.

To the extent that defendant argues for the first time on appeal that Smith's affidavit supports a free-standing claim of actual innocence, we reject it as waived for failure to raise it in his post-conviction petition. 725 ILCS 5/122-3 (West 2000). Furthermore, the evidence being relied upon to support a free-standing claim of actual innocence means that it is not being used to supplement an assertion of a constitutional violation with respect to the defendant's trial. People v. Hobley, 182 Ill. 2d 404, 443-44, 696 N.E.2d 313, 341 (1998). Here, the Smith affidavit is being used by defendant to assert ineffective assistance of counsel claims with respect to his trial. Therefore, it cannot also be used to support a free-standing claim of actual innocence. Moreover, at sentencing, defendant waived his fifth amendment right against self-incrimination and confessed to the offenses in allocution. Accordingly, defendant's own words contradict his post-conviction claim of actual innocence and do not merit an evidentiary hearing.

Lastly, defendant contends for the first time in a supplemental brief on appeal that he is

entitled to 419 days of pre-sentence credit, rather than the 355 days reflected in the mittimus. The State was granted leave to respond to defendant's supplemental brief, but inexplicably failed to do so. This court addressed this issue in its previous order which has now been vacated at the direction of the supreme court. People v. Brown, No. 1-04-1943 (2006) (unpublished order under Supreme Court Rule 23). When we originally considered this issue, we noted that it involved a right created by statute, and that we had consistently held it was not an issue of constitutional magnitude subject to scrutiny under the Post-Conviction Hearing Act, citing People v. Reed, 335 Ill. App. 3d 1038, 1039-40, 782 N.E.2d 955, 956-57 (3d dist. 2003); People v. Bates, 179 Ill. App. 3d 705, 709, 534 N.E.2d 1019, 1021 (1989) (issue of amount of sentence credit was not of constitutional stature). Accordingly, it was not an issue properly before the court. We additionally rejected defendant's assertion, citing North Carolina v. Pearce, 395 U.S. 711, 718-19, 89 S. Ct. 2072, 2077, 23 L. Ed. 2d 656 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed.2 d 865 (1989), that his sentencing credit implicated double jeopardy concerns. Rather, we indicated that Pearce dealt with the question of double jeopardy upon retrial and held that punishment already exacted must be fully credited in imposing sentence upon a new conviction for the same offense. Pearce, 395 U.S. at 718-19, 89 S. Ct. at 2077, 23 L. Ed. 2d 656.

Additionally, we found that despite several opportunities to raise the issue, defendant never raised it at trial, on direct appeal, in his post-conviction petition or supplemental post-

conviction petition, and raised it for the first time in a supplemental brief on appeal. Accordingly, we found the issue had been forfeited due to defendant's failure to raise the issue on direct appeal (People v. Blair, 215 Ill. 2d 427, 442, 831 N.E.2d 604, 664 (2005)) and waived for failure to raise the issue in either of his post-conviction petitions (725 ILCS 5/122-3 (West 2000)). We further rejected defendant's assertion that People v. Woodard, 175 Ill. 2d 435, 453-457, 677 N.E.2d 935, 944-46 (1997) stands for the proposition that the issue of proper sentencing credit cannot be waived. We indicated that Woodard was not based upon proceedings under the Post-Conviction Hearing Act, and that it merely held that the credit may be allowed if requested for the first time on a direct appeal. Woodard, 175 Ill. 2d at 453-457, 677 N.E.2d at 944-46. Accordingly, where the issue was not cognizable under the Act, and where it was not raised on direct appeal or in either post-conviction petitions, we would not consider it.

Simultaneously to our decision, the Third District was called upon to address a similar issue in People v. Andrews, 365 Ill. App. 3d 696, 850 N.E.2d 888 (2006). Although the court acknowledged that the issue of sentence credit involved a right created by statute and, thus, not subject to scrutiny under the Act, and acknowledged that the issue was raised for the first time on appeal from the dismissal of his post-conviction petition, the court held that it had the authority under Supreme Court Rule 615(b)(1) (134 Ill. 2d R. 615(b)(1)), to modify the trial court's order to correct a clerical error to give the defendant credit for all of his pre-sentence custody. Andrews, 365 Ill. App. 3d at 699-700, 850 N.E.2d at 891-92. In doing so, the court rejected

1-04-1943

<u>People v. Reed</u>, 335 Ill. App. 3d at 1039-40, 782 N.E.2d at 956-57.  Presiding Justice Schmidt

dissented, reiterating that this court does not have the power on an appeal from a denial of a

postconviction petition to address issues not raised in the postconviction petition, citing <u>People v.</u>

<u>Jones</u>, 213 Ill. 2d 498, 821 N.E.2d 1093 (2004).  He stated that while the supreme court can rely

on its supervisory authority to address an issue not properly before the court, Rule 615 is not a

grant of supervisory authority to this court.

Subsequently, in the present case, in the exercise of the supreme court's supervisory

order, this court was directed to vacate its judgment in <u>People v. Brown</u>, 1-04-1943 (2006)

(unpublished order under Supreme Court Rule 23), to allow the State another opportunity to

respond to defendant's request for additional sentencing credit.  The State responded in lockstep

with our previous order, arguing that it was not cognizable under the Act and forfeited.  The State

did not dispute the merits of the sentencing credit issue.  Accordingly, where the supreme court

has directed this court to determine the merits of defendant's sentencing credit request and to

grant him credit if required, we order the mittimus corrected to reflect that defendant is entitled to

419 days of pre-sentence credit.

For all of the foregoing reasons, we affirm the judgment of the circuit court; mittimus

corrected.

Affirmed.

HOFFMAN and KARNEZIS, JJ., concur.

**THE PEOPLE OF THE STATE OF ILLINOIS,**

     Plaintiff-Appellee,

     v.

**KEITH BROWN,**

     Defendant-Appellant.

---

**No. 1-04-1943**

**Appellate Court of Illinois**
**First District, Third Division**

**Filed: February 28, 2007**

---

**PRESIDING JUSTICE THEIS delivered the opinion of the court.**

**Hoffman and Karnezis, JJ., concur.**

---

**Appeal from the Circuit Court of Cook County**
**Honorable Colleen McSweeney Moore, Judge Presiding**

---

| | |
|---|---|
| **For APPELLANT,** | **Michael J. Pelletier, State Appellate Defender** |
| | **Carolyn R. Klarquist, Assistant Appellate Defender** |
| | **Office of the State Appellate Defender** |
| | **203 N. LaSalle St., 24th Floor** |
| | **Chicago, IL 60601** |
| | |
| **For APPELLEE,** | **Richard A. Devine, State's Attorney** |
| | **James E. Fitzgerald, Assistant State's Attorney** |
| | **Tasha Marie Kelly, Assistant State's Attorney** |
| | **Jackie Thursby-Elvekrog, Assistant State's Attorney** |
| | **300 Richard J. Daley Center** |
| | **Chicago, IL 60602** |