No. 2--07--0239     Filed: 9-15-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 02--CF--3410 |
| RAMESH K. SWAMYNATHAN, | ) ) ) | Honorable Fred L. Foreman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, Ramesh K. Swamynathan, appeals from the trial court's order dismissing his pro se petition for relief pursuant to the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122--1 et seq. (West 2006)) as frivolous and patently without merit. Defendant's petition attacked his conviction of first-degree murder (720 ILCS 5/9--1(a) (West 2002)), which was entered after he pleaded guilty but mentally ill. In his petition, defendant alleged that he was not mentally fit at the time he entered his guilty plea and that, therefore, his plea was involuntary. On appeal, defendant contends that the trial court erred in dismissing his petition, because it alleged the gist of a constitutional claim. We affirm.

On October 9, 2002, defendant was charged by indictment with the September 6, 2002, murder of the victim, Ramarao Chittiprolu. The indictment alleged that defendant killed the victim by stabbing him with a knife and vegetable peeler.

After defendant was taken into custody, the trial court found a bona fide doubt as to defendant's mental fitness and ordered that he undergo a fitness evaluation. On October 15, 2002, a report of the fitness evaluation was filed in the trial court and reflected that defendant suffered from a "Schizoaffective Disorder or Schizophrenic Disorder that *** include[d] delusion[al] thinking." Also on October 17, 2002, the trial court found defendant unfit to enter a plea or stand trial and remanded him to the Illinois Department of Mental Health and Developmental Disabilities (DMH) for treatment.

In a written report filed in the trial court on April 15, 2003, the DMH reported that defendant had been restored to fitness. The report indicated that, at the time of his initial admission, defendant was acutely psychotic and was preoccupied with auditory hallucinations. Defendant was also "hyper-vigilant" and anxious and was unable to calm down. Defendant exhibited symptoms of depression, including difficulty sleeping, poor appetite, feelings of hopelessness, and suicidal ideations. The report indicated that, upon treatment with Prozac and risperidone, defendant's psychiatric symptoms and depressive symptoms had subsided, and his sleep and appetite improved. The report concluded that defendant was fit to stand trial provided that he continued taking his medications. The report stated that defendant had an understanding of the charges against him and the function of the legal system, including the roles of the judge, jury, prosecuting attorney, defense attorney, and witnesses. Further, defendant could communicate logically and assist in his own defense. The report stated that defendant's medications would not affect defendant's ability to participate at trial. The report suggested that, because defendant was a native of India and his first language was Tamil, he would benefit from the presence of a Tamil interpreter in any future

evaluations. The report stated that, while defendant understood and could speak some English, he was "more expressive and fluent in Tamil."

On July 2, 2003, the parties stipulated to the DMH's finding of fitness and the trial court entered an order finding defendant fit to stand trial. The trial court also entered an order requiring the presence of a Tamil interpreter to assist defendant in all court proceedings. Due to some difficulties in locating an interpreter, though, defendant was without an interpreter during some of the initial proceedings, including a portion of the hearing on defendant's motion to suppress.

On April 29, 2004, defendant, assisted by counsel and a Tamil interpreter, appeared before the trial court to enter a plea of guilty but mentally ill to the charge of first-degree murder. The trial court summarized the factual basis for the plea and admonished defendant of the charges against him, the consequences of pleading guilty, and the potential sentences. Defendant stated that he understood the trial court's admonishments. In response to questioning by the trial court, defendant provided his name and age and stated that he was a citizen of India. Defendant stated that he was not under the influence of illegal drugs or alcohol and indicated that he had taken his prescribed medications. Defendant stated that his prescription medication did not affect his ability to understand the proceedings and that he was not having any difficulty concentrating. The trial court noted the presence of the interpreter and encouraged defendant to let the interpreter know if he did not understand anything being said. Defendant confirmed that he wished to plead guilty but mentally ill to the charge of first-degree murder. Defendant confirmed that he had spoken to his lawyers about his case and that he was satisfied with their representation. Defendant stated that he had not been threatened and had not received any promises in return for his guilty plea.

Following the trial court's colloquy with defendant, the trial court stated:

"The Court finds a knowing, voluntary and intelligent waiver of trial by judge or jury. The defendant persists in his plea. An adequate factual basis is presented through [defendant's] confession ***.

***

The Court also finds the defendant--I have no bona fide doubt as to the fitness of the defendant today. He seems lucid. He understands what we are talking about. He converses with us in English. He clearly understands what the interpreter is telling him. ***

* * *

I, therefore, conditionally accept the plea and enter a finding of guilty on this charge. I will order a Pre-Sentence Investigation and set the case for sentencing ***."

On May 27, 2004, after conducting a sentencing hearing, the trial court sentenced defendant to 20 years' imprisonment.

On April 13, 2006, defendant filed a pro se motion to withdraw his guilty plea and to vacate his sentence. Defendant alleged that, prior to entering his plea, he was admitted to a psychiatric hospital as "a pretrial detainee." Defendant alleged that, "due to [his] mental state of mind, [his] plea was not knowing, nor intelligent." Defendant further alleged that he "was not mentally competent to enter a plea" or to understand the constitutional rights he was waiving as a result of his plea. In support of his motion, defendant supplied his own affidavit, in which he averred that he was "not of sound mind" when he entered his guilty plea. Defendant averred that his "mental state of mind was such as to that of a complete mental breakdown" and that he was still suffering from severe mental illness at the time he pleaded guilty. Defendant averred that he did not understand the constitutional

rights he was giving up by pleading guilty and that he was "totally ignorant of the law and the legal proceedings in the United States when [he] pled."

On July 13, 2006, during a status hearing on defendant's motion, the trial court noted that the motion to withdraw the guilty plea was untimely and determined that the motion should be recharacterized as a postconviction petition in accordance with the procedure established in People v. Shellstrom, 216 Ill. 2d 45 (2005). The trial court continued the case so that defendant, who was not present in court, could be admonished accordingly. On July 27, 2006, defendant was present in open court and the trial court informed him that it was going to recharacterize his motion as a postconviction petition. Defendant indicated that he would accept the recharacterization; however, no Tamil interpreter was present during the hearing. Defendant told the trial court he understood English "a little bit."

On November 2, 2006, the trial court returned defendant to court for additional admonishments. On this date, a Tamil interpreter was available to assist defendant. The trial court explained to defendant that it had recalled the case so that he could be admonished through an interpreter to make sure he understood the proceedings. The trial court once again advised defendant that his motion to withdraw his guilty plea would be recharacterized as a postconviction petition. Additionally, for the first time, the trial court admonished defendant that, because of the recharacterization, he would be subject to the Act's restrictions on successive postconviction petitions. The trial court also admonished defendant that he would be given an opportunity to withdraw the petition or to make any amendments that he desired. Defendant indicated his understanding and assent to the trial court's admonishments.

On January 26, 2007, the trial court entered a written order dismissing defendant's postconviction petition as frivolous and patently without merit. Based upon its review of the transcript of the guilty plea proceedings, the trial court concluded that the record belied defendant's claim that he did not knowingly and intelligently plead guilty. The trial court noted that the trial judge who had accepted defendant's plea had been well informed of defendant's mental history and had specifically inquired and confirmed defendant's fitness to enter a plea. Accordingly, the trial court concluded that defendant's postconviction petition failed to state the gist of a constitutional claim. Defendant subsequently filed a timely notice of appeal.

Prior to considering the merits of the appeal, we first address defendant's motion for summary remand that we ordered taken with the case. In his motion, defendant argues that the trial court failed to enter its dismissal order within 90 days of the docketing of his petition as required by section 122--2.1(a)(2) of the Act (725 ILCS 5/122--2.1(a)(2) (West 2006)). Defendant notes that the trial court's dismissal order was entered more than 90 days after July 27, 2006, the date the trial court first advised defendant that it was recharacterizing his motion to withdraw his guilty plea as a postconviction petition. Defendant requests that we summarily reverse the trial court's dismissal order and remand the case for the appointment of counsel and for second-stage proceedings in accordance with the Act. See People v. Porter, 122 Ill. 2d 64, 86 (1988) (holding that the time restriction of section 122--2.l(a) is mandatory and that trial court's failure to act within statutory period requires trial court to docket the petition for further proceedings under the Act).

In Shellstrom, our supreme court held that, where a trial court is presented a pro se pleading alleging a deprivation of rights cognizable in a postconviction proceeding, the trial court may choose to treat the pleading as a postconviction petition, even where the pleading is labeled differently.

Shellstrom, 216 Ill. 2d at 53. Where a trial court chooses to recharacterize a pleading as a postconviction petition, it must (1) notify the pro se litigant that it intends to recharacterize the pleading; (2) warn the litigant that the recharacterization means that any subsequent postconviction petition will be subject to the restrictions on successive postconviction petitions; and (3) provide the litigant an opportunity to withdraw the pleading or to amend it so that it contains all the claims appropriate to a postconviction petition that the litigant believes he or she has. Shellstrom, 216 Ill. 2d at 57. Until the trial court provides all of the required admonishments, the pleading is not considered to have become a postconviction petition for purposes of the Act. Shellstrom, 216 Ill. 2d at 57.

In the present case, although the trial court first advised defendant on July 27, 2006, of its intent to recharacterize his pro se motion to withdraw his guilty plea as a postconviction petition, it failed to provide defendant all of the admonishments required by Shellstrom on this date. As detailed above, on July 27, 2006, the trial court advised defendant only of its intent to recharacterize his motion. On this date, the trial court did not admonish defendant that such a procedure would subject him to the Act's restrictions on successive postconviction petitions; the trial court also did not provide defendant an opportunity to withdraw the pleading or to amend it. Without such admonishments, defendant's pleading could not be considered to have become a postconviction petition under the Act. See Shellstrom, 216 Ill. 2d at 57.

It was not until the November 2, 2006, hearing that the trial court fully admonished defendant in accordance with Shellstrom and gave him the opportunity to withdraw his pro se pleading or amend it. Therefore, under Shellstrom, November 2, 2006, is the earliest date that defendant's pleading could be considered to have been docketed before the trial court under the provisions of the

Act. See Shellstrom, 216 Ill. 2d at 57. As the trial court's January 26, 2007, dismissal order was entered within 90 days of November 2, 2006, we conclude that the trial court completed its first-stage review with the time required by section 122--2.1(a)(2) of the Act. Therefore, defendant is not entitled to a remand on this basis and we deny his motion for summary remand.

Turning to the merits of the appeal, defendant contends that the trial court erred in dismissing his postconviction petition as frivolous and patently without merit. Defendant argues that the petition stated the gist of a constitutional claim and that he should have been afforded the opportunity to further develop his claim with the assistance of counsel. As detailed above, defendant's petition alleged that his guilty plea was not knowing and intelligent because he was not competent to understand his rights or to enter a plea. In his appellate brief, defendant notes that his mental health had always been a central issue in the case and argues that his allegation of mental incompetence "was, at the very least, not clearly rebutted by the record." Defendant additionally asserts, for the first time on appeal, that his plea was involuntary (1) due to the unavailability of a Tamil interpreter at certain hearings, and (2) as a result of the trial court's failure to admonish him at the time of his plea that he would be required to serve a term of mandatory supervised release (MSR).

The Act provides a remedy to criminal defendants who have suffered substantial violations of their constitutional rights. People v. Barcik, 365 Ill. App. 3d 183, 190 (2006). When the death penalty is not involved, there are three stages to proceedings under the Act. Barcik, 365 Ill. App. 3d at 190. In the instant case, defendant's petition was dismissed at the first stage. During the first stage, the trial court determines whether the defendant's allegations sufficiently demonstrate a constitutional violation that would necessitate relief. People v. Coleman, 183 Ill. 2d 366, 380

(1998). The trial court may summarily dismiss the petition if it finds that the petition is "frivolous or is patently without merit." 725 ILCS 5/122--2.1(a)(2) (West 2006). A petition is "frivolous or patently without merit" if it does not state the gist of a constitutional claim. People v. Edwards, 197 Ill. 2d 239, 244 (2001). We review de novo the first-stage dismissal of a postconviction petition. Barcik, 365 Ill. App. 3d at 190.

We first consider defendant's allegations that he was mentally unfit to enter a plea of guilty. During postconviction proceedings challenging a finding of fitness, a defendant must show in his or her petition sufficient facts to raise a bona fide doubt of his or her fitness to stand trial. People v. Shum, 207 Ill. 2d 47, 57 (2003). A defendant is considered unfit to participate in the trial proceedings if, because of the defendant's mental or physical condition, he or she is unable to understand the nature and purpose of the proceedings and to assist in his or her defense. 725 ILCS 5/104--10 (West 2006); People v. Moore, 189 Ill. 2d 521, 535 (2000). The mere fact that a defendant has limited mental capacity does not by itself render him or her unfit to stand trial. Moore, 189 Ill. 2d at 536. Our supreme court has held that fitness refers only to a person's ability to function within the context of a trial, such that a defendant may be fit to stand trial although the defendant's mind is otherwise unsound. Moore, 189 Ill. 2d at 536. Factors relevant to the trial court's fitness determination include: (1) the defendant's knowledge and understanding of the charge, the proceedings, the consequences of a plea, judgment, or sentence, and the functions of the participants in the trial process; (2) the defendant's ability to observe, recollect, and relate occurrences, especially those concerning the incidents alleged, and to communicate with counsel; and (3) the defendant's social behavior and abilities, orientation as to time and place, recognition of persons, places, and

things, and performance of motor processes. 725 ILCS 5/104--16(b) (West 2006); People v. Mitchell, 189 Ill. 2d 312, 335 (2000).

In his petition and accompanying affidavit, defendant offers nothing but conclusory and unsupported assertions that he was not "mentally competent to enter a plea"; he had not been "of sound mind"; and he had been suffering from "a complete mental breakdown." These conclusions, standing alone, are not sufficient to raise a bona fide doubt of fitness, as defendant alleges no supporting facts. See People v. Vunetich, 185 Ill. App. 3d 415, 419 (1989). Moreover, these allegations are plainly refuted by the record, which reflects that no bona fide doubt regarding defendant's fitness existed at the time he entered his guilty plea. As detailed above, although defendant was initially found to be unfit to stand trial following his arrest, he received treatment by the DMH and was later found to have been restored to fitness by stipulation of the parties. At the hearing in which defendant pleaded guilty, the trial court specifically inquired as to his fitness. During this inquiry, defendant stated that he was taking his prescribed medications, he was having no difficulty concentrating, he had the opportunity to consult with his attorney, and he understood the proceedings. As a result of its colloquy with defendant, and by its own observation of his behavior, the trial court that accepted the plea specifically found no bona fide doubt as to defendant's fitness. Defendant offers no evidence in his petition that would refute the trial court's conclusion that he was fit to enter a plea. Accordingly, defendant's conclusory allegations of unfitness fail to state the gist of a constitutional claim under the Act. See People v. Rogers, 197 Ill. 2d 216, 222 (2001) (holding that dismissal of postconviction petition is appropriate where the record from original trial proceedings contradicts the defendant's allegations and shows the petition is without merit).

As noted above, defendant raises two additional issues for the first time on appeal. Specifically, defendant argues that his plea was involuntary (1) due to the unavailability of a Tamil interpreter at certain hearings, and (2) as a result of the trial court's failure to admonish him, at the time of his plea, that he would be required to serve a term of MSR. Because these matters were not raised in defendant's petition, they have been waived, and we decline to consider them on appeal. See 725 ILCS 5/122--3 (West 2006) ("Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived"). The sole basis of defendant's claim that his plea was involuntary was his allegations that he was mentally unfit. As we have discussed, defendant's allegations failed to state the gist of a constitutional claim, and the trial court properly dismissed his petition as frivolous and patently without merit.

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

McLAREN and JORGENSEN, JJ., concur.